SILAS COREY and S. T. MESERVEY, Appellants, v. THE CITY OF FORT DODGE AND OTHERS, Appellees.

**Municipal indebtedness:** SPECIAL ASSESSMENTS: CONSTITUTIONAL 1 LIMIT: DEFICIENCY. Contracts for a public improvement made under a statute providing therefor, the cost of which is to be assessed against abutting property and payment therefor to be by delivery to the contractor of the assessment certificates, and further providing that probable deficiencies shall be paid out of a special fund to be created for that purpose, do not create a municipal indebtedness within the meaning of the constitution.

Public improvements: PAYMENT BY CITY: CONSTRUCTION OF STAT-
UTES. Code, sections 894, and 830, have relation to the same
fund for defraying the cost of a public improvement, the
former authorizing an improvement fund by an annual levy
and the latter providing for augumenting the fund where the
burden exceeds the limit of a single levy, by levying the
entire amount required at one time to be paid in instalments
covering a series of years; so that improvements made under
a contract providing for payment out of the general fund con-
templated by section 849, may be paid by warrants drawn on
the funds created by a levy and assessment pursuant to sec-
tion 830.

Same: PRESUMPTIONS: CONSTRUCTION OF CONTRACTS. Where a con-
tractor has agreed to accept payment for a public improve-
ment, in excess of the amount of special assessments, out of
a specified fund, it will be presumed that payment in the man-
ner and on the terms authorized by law was contemplated;
and if the contract is fairly capable of a construction which
will render it enforceable such construction will be adopted.

Public improvement: PAYMENT BY GENERAL TAX. The fact that a
city has by general ordinance provided for paying the expense
of paving the street intersections and that portion of the
streets in front of public property by assessments upon abut-
ting property, is not a bar to a subsequent determination to
provide for the payment thereof by a general assessment of
the entire property of the city.

Taxation: INJUNCTION. Objection to a tax which goes simply to
the amount, with no offer to pay the sum conceded to be just,
will not justify the interference of a court of equity.

*Appeal from Webster District Court.*— HON. J. R.
WHITAKER, Judge.

TUESDAY, MARCH 12, 1907.

AN action in equity to declare void and enjoin the col-
lection of certain special assessments. The district court
dismissed the petition, and the plaintiffs appeal.— *Affirmed.*

*Wright & Nugent* and *A. N. Botsford,* for appellants.

*Mitchell & Hackler* and *Read & Read,* for appellees.

WEAVER, C. J.— The city of Ft. Dodge, Iowa, after
the usual preliminary proceedings, entered into several con-
tracts with the Barber Asphalt Paving Company for pav-
ing certain streets or parts of streets in said city. Said
contracts contained a provision ·by which the cost of the
improvement was to be assessed against the abutting prop-
erty, not to exceed in any case twenty-five per cent. of the
value of the property to be so charged, and the certificates
of such special assessments or taxes were to be accepted
by the contractor to the extent thereof, in payment for said
improvements. It was also further provided that, in case
such special assessments as thus limited proved to be less than
the amount earned under the contract, the deficiency was
to be " paid out of the general paving fund of said city of
Ft. Dodge, by warrants drawn thereon." Certain lots
abutting on the improvements belonged to the city, and the
extent of the paving done included several street intersec-
tions. At the date of said contracts, there was in existence
an ordinance of said city, providing that the cost of paving
and curbing at the intersections of streets and of one-half of
the paving of opposite property owned by the city or by
the United States should be assessed against the property
abutting or fronting upon the improvement proportion to the
linear front feet abutting thereon, subject, however, to the
same limitations that the total charge of the special assess-
ment should not exceed twenty-five per cent. of the value of
the lot or tract upon which it was levied. Upon the com-
pletion of the work under these several contracts, it was
found that, after assessing the abutting property in propor-
tion to the special benefits it derived from the improvements,
and limiting the liability of said property to twenty-five per
cent. of its actual value, there remained a deficiency to the
amount of several thousand dollars. To provide for this
deficiency, and make payment to the contractors, the city
council, by resolution, ordered that a levy be made therefor
upon the taxable property of the city under the provisions

of Code, section 830, and instructed the mayor and clerk of said city to issue warrants on the funds so provided, payable to the Barber Asphalt Paving Company, in settlement of the balance due said company under its several contracts.

The appellants, who are residents and taxpayers in said city, bring this action in equity to declare the warrants so issued void, and to enjoin their collection. The claim thus asserted is based on the following propositions: First. That the city of Ft. Dodge, at the date of the several contracts above referred to, was indebted to the full constitutional limit, and that said contracts had the effect to increase the corporate indebtedness beyond said limit, and were therefore void. Second. It is said that said contracts provided in their terms for the payment of the deficiency, if any, out of the general paving fund of the city of Ft. Dodge, while the warrants, payment of which is sought to be enjoined, were issued, not upon the general paving fund, but upon a special improvement fund. Third. Because, by the ordinance to which reference has already been made, the cost of paving street intersections and spaces opposite property owned by the city should have been apportioned to the property benefited, and not made a burden upon the entire taxable property of the city. The trial court found against the appellants upon each of these propositions, and dismissed their petition.

I. The objection based upon the constitutional limit of municipal indebtedness is not, in our judgment, well founded. Contracts for street improvements made under

1. MUNICIPAL INDEBTEDNESS: special assessments: constitutional limit: deficiency.

the statute providing therefor, the cost of which is to be assessed against the abutting property, and payment therefor made by delivering to the contractor the assessment certificates, with a special provision specifying the manner in which probable deficiencies shall be raised, do not, in our judgment, create a municipal indebtedness, within the meaning of the constitutional provision on that subject. See *Davis v. Des*

*Moines,* 71 Iowa, 500; *Tuttle v. Polk,* 92 Iowa, 433; *Clinton v. Walliker,* 98 Iowa, 661; *Swanson v. Ottumwa,* 118 Iowa, 174; *Light & Power Co. v. Ft. Dodge,* 115 Iowa, 568.

It is to be said also that the statement made by the appellant of the alleged indebtedness of the city includes several items not properly chargeable as outstanding indebtedness, and fails to take account of other items which should be deducted in such computation, and we are unable to see from the record that the city's limit of valid indebtedness had in fact been reached. But, even if in error on this point, we think it is rendered immaterial by the further conclusion upon which we are entirely satisfied, that no indebtedness within the meaning of the limitation was created. Counsel say that, conceding the general rule that contracts for improvements to be paid by special assessments do not create a municipal indebtedness, yet, as the contracts in suit expressly contemplate a possible deficiency, the city does to that extent assume the relation of a debtor, because the undertaking is not accompanied by any provision for raising the necessary revenue of which said obligation may be considered an allowable anticipation.

To uphold this proposition requires an unnecessarily narrow construction of the contract and of the statute. Counsel seem to concede that, if the agreement had by its terms provided for a collection of the deficiency upon the plan found in Code, section 830, their objection would be untenable. Assuming this to be the law we are of the opinion that the contracts came within its requirements. It was not possible to say in advance whether any deficiency would be found, or its amount if found. The most the city could do in this respect was to pledge itself to meet that contingency by some appropriate fund which it had the legal right to provide for that purpose. This it did. It may be admitted that the term "paving fund" used in one contract, and "general paving fund" in another, are

rendered somewhat ambiguous when we read them in con-
nection with the involved and frequently obscure language
employed in the statute.  But there is no paving fund which
the statute specifically designates and distinguishes from all
other funds by the qualifying word " general," and we may
properly look to the entire contract, to the situation of the
parties, to their methods of dealing with each other, and
to the practical construction which they themselves placed
upon their mutual obligations, to determine what meaning
shall be placed upon the doubtful phrase.  Applying this
test, we think the trial court did not err in its conclusion
that the agreement contemplated a pledge of the very fund
on which the warrants were drawn.  This thought will be
further elaborated in the following paragraph of this opin-
ion.

II.   The point most confidently urged by the appel-
lants is that the contracts provide for the payment of de-
ficiencies out of one fund, while the warrants issued are

**2. PUBLIC IM-**
**PROVEMENTS:**
**payment by**
**city; con-**
**struction of**
**statutes.**

drawn upon another.  Counsel say that
Code, section 894, subdivision 2, creates or
provides a general paving fund to which the
parties must be conclusively held to have had reference,
while Code, section 830, relates to a special improvement
fund to be levied at the option of the city to meet special
needs and emergencies, as they may arise.  The language
of these sections does not bear out counsel's contention.
Section 894, so far as applicable herein, reads as follows:

" Any city shall have power to levy annually the fol-
lowing special taxes. . . . (2) Improvement Fund.  A
tax not to exceed in any one year five mills on the dollar
to be used for the purpose of paying the cost of making,
reconstruction or repair of any street improvements at the
intersections of the streets, . . . and at spaces oppo-
site property owned by the city or by the United States "
— and for other specified purposes.  Turning next to sec-
tion 830, we find it to read as follows:  " Section 830.

Levy for City Improvement Fund.   When the whole or any part of the cost of making or reconstruction of any street improvement shall be ordered paid from the city improvement fund to be levied upon all property within any city, it shall have the power after the completion of the work, by ordinance or resolution to levy at one time the whole or any part of the cost of said improvement upon all the taxable property within such city and determine the whole percentage of tax necessary to pay the same and the percentage to be paid each year not exceeding the maximum annual limit of said taxes and the number of years, not exceeding ten, given for the maturity of each installment thereof but no part of such cost shall be levied against property owned by the city or by the United States."

A careful reading of the language of the two sections above quoted makes it very clear that they do not provide for the creation of two distinct funds.   Section 894, subdivision 2, allows the city to provide a " city improvement fund " by an annual levy not to exceed five mills on which warrants may lawfully be drawn for any of the specified street improvements or repairs.   Section 830 contemplates a contingency where the expense of the improvement properly chargeable to such fund may be burdensome if payment is exacted at once, or may be in excess of the amount which can be raised by a single levy within the limit placed thereon by law, and provides that this condition may be relieved by levying the entire amount at once and making the tax or assessment payable in annual installments covering a series of years.   The phrase, " the city improvement fund," is used in section 830 in a manner clearly indicating the thought in the mind of the Legislature that the law elsewhere already provides for a fund so designated or known. The fund described in section 894, subdivision 2, is the only one which fills this bill.   It provides in specific terms for a " city improvement fund," and the purposes for which it is to be used are inclusive of or identical with the purposes

mentioned in section 830. When, therefore, the latter speaks of " the city improvement fund," it can refer to none other than the city improvement fund provided for in section 894.

In short, section 830 does no more than provide how an excessive or burdensome demand upon the fund mentioned in section 894 may be provided for by a single present levy of the entire sum, payable in deferred installments, each within the statutory limits of such taxation, extending over a number of years. Hence, if appellants be correct in their contention that the phrase " general paving fund " should be construed to mean the fund contemplated by section 894, it follows that payment in the manner permitted by section 830 is in law and in fact a payment from said fund. The word " general," as used in the contracts, was evidently employed to indicate the appropriate fund which was to be raised by general taxation as distinguished from the amount to be raised by special assessments.

It is true the contracts do not provide in specific terms that payments shall be made from said fund in installments, or that the city assumed no liability except to levy and collect the assessments thus made; but we think such intent is so clearly implied that, were the contractor suing the city to recover as upon a general liability, it would necessarily be held to have no right of action. When the contractor agreed to accept payment of deficiencies from the specified fund, it must be presumed that he had in mind a payment in the manner and upon the terms which the law authorized. At least, if the language employed in such stipulation be vague or general, and is fairly capable of a construction which will render it valid and enforceable against both parties thereto, it is an elementary rule that such construction will be adopted by the courts.

3. SAME: presumptions: construction of contracts.

III. We are further asked to hold that, as prior to these contracts the city had enacted a general ordinance

providing for assessment of the expense of paving street intersections and spaces in front of city and government property upon the property of private owners abutting upon the improvement, the act of the city council in providing for the payment of deficiencies from a fund raised by general taxation is void. It must be remembered, however, that the power of levying special assessments by cities is not unlimited, and must stop somewhere short of entire confiscation. Under the law of this State, the assessment must exceed neither the special benefits conferred by the improvements nor one-fourth of the actual value of the property assessed for its expense. This limitation cannot be avoided by an ordinance of the city, and, when that limitation is reached, the deficiency can only be adjusted as provided by the statute. The enactment of a general ordinance could not operate as an abdication of legislative power by the council, nor prevent its providing by subsequent action for any other lawful method of assessing and collecting the deficiency arising in any particular case. But, if we understand counsel, it is not denied that, if the paving contracts in question were valid, a deficiency to be provided for by assessment upon the taxable property of the municipality generally would be found to exist, even if the plan provided by the prior ordinance had been pursued in making the assessment; but it is said the plan actually adopted was faulty, and had the effect to make such deficiency larger than it should have been.

*4. PUBLIC IMPROVEMENT: payment by general tax.*

We have examined the appellants' theory of the method which should have been pursued, and, if we comprehend the scheme suggested, the result of its application would not differ materially from the one produced by the method actually employed. Moreover, an objection to a tax or levy which goes simply to its amount, and not to its validity, and is accompanied by no offer to pay the amount conceded to be just,

*5. TAXATION: injunction.*

will not justify the interference of a court of equity.    See *Collins v. Keokuk,* 118 Iowa, 30; *Electric Light Co. v. Mc-Crary,* 132 Iowa, 624.

An examination of the entire record·leads us to agree with the trial court that the appellants failed to present a case calling for the relief demanded, and the decree appealed from is therefore *affirmed.*