[Sac. No. 4623. In Bank.—April 23, 1934.]

AMERICAN COMPANY (a Corporation), Appellant, v. CITY OF LAKEPORT et al., Respondents.

Orrick, Palmer & Dahlquist for Appellant.

William H. Hazell, City Attorney, Norman E. Malcolm and Leon Thomas David for Respondents.

E. C. Pyle, H. A. Postlethwaite, Samuel W. Gardiner, Nutter & Rutherford, A. P. Hayne, O'Melveny, Tuller & Myers, James L. Beebe and Bowersock, Fizzell & Rhodes as *Amici Curiae* on behalf of Appellants.

Everett W. Mattoon, County Counsel (Los Angeles), and R. C. McAllaster, Deputy County Counsel, Ray L. Chesebro, City Attorney (Los Angeles), and F. Von Schrader, Assistant City Attorney, Buron Fitts, District Attorney (Los Angeles), and Robert J. Stahl, Deputy District Attorney, Ralph W. Swagler, City Attorney (Burbank), James H. Mitchell, Special Counsel (Burbank), A. L. Sebile, City Attorney (Brawley), H. F. Orr, City Attorney (Ventura), Hugh B. Bradford, City Attorney (Sacramento), Albert Mansfield, City Attorney (Redwood City), Norman E. Malcolm, City Attorney (Palo Alto), Harold P. Huls, City Attorney (Pasadena), Guy Lewis, City Attorney (Hawthorne), Richard C. Waltz, City Attorney (Beverly Hills), J. Leroy Johnson, City Attorney (Stockton), Thomas M. Carlson, City Attorney (Richmond), James M. Allen, City Attorney (Yreka), E. L. Randall, City Attorney (Corning), Fred C. Hutchinson, City Attorney (Berkeley), C. A. Raker, City Attorney (Alturas), Albert Launer, City Attorney (Brea), George R. Wing, City Attorney (Beaumont), George R. Kirk, City Attorney (Calexico), R. K. Pierson, City Attorney (Compton), A. F. Bray, City Attorney (Concord), William S. Emmons, City Attorney (Culver City), Waldo Willhoff, City Attorney (Colton), Arthur Frame, City Attorney (Clovis), J. E. Greene, City Attorney (Dinuba), Eugene Best, City Attorney (Elsinore), A. R. Honnold, City Attorney (Escondido), Bernard Brennan, City Attorney (Glendale), Roy H. Overacker, City Attorney (Huntington Beach), Clyde Woodworth, City Attorney (Inglewood), J. A. Isaacson, City Attorney (La Mesa), Milburn D. Harvey, City Attorney (Laguna Beach), C. B. Hubbard, City Attorney (Lynwood), Frank L. Perry, City Attorney (Manhattan Beach), J. Harold Cragin, City Attorney (Maywood), Louis H. Burke, City Attorney (Montebello), Jesse W. Carter, City Attorney (Mt. Shasta City), E. T. Maxwell, City Attorney (Mountain View), Roland Thompson, City Attorney (Newport Beach), W. G. McKeen, City Attorney (Oceanside), E. H. Jolliffe, City Attor-

ney (Ontario), Raymond E. Hodge, City Attorney (Rialto), Robert W. Harrison, City Attorney (San Anselmo), R. A. Rapsey, City Attorney (San Bruno), D. M. Acres, City Attorney (San Clemente), Clyde Downing, City Attorney (Santa Ana), J. F. Goux, City Attorney (Santa Barbara), A. H. Blanchard, City Attorney (Santa Paula), T. W. Wilzinski, City Attorney (Sonora), Clyde Woodworth, City Attorney (South Gate), Lloyd E. Hewitt, City Attorney (Yuba City), Martinelli & Gardiner, Jordan L. Martinelli and Samuel W. Gardiner as *Amici Curiae* on behalf of Respondents.

THE COURT.—A rehearing was granted in this case in order to give fuller consideration to the difficult questions of constitutionality and statutory construction involved. Upon such consideration, we adhere to and adopt the following part of our former opinion:

"This is an appeal from a judgment of the superior court of Sonoma county, sustaining, without leave to amend, respondents' demurrer to petitioner's application for a writ of mandate. The case involves the construction and constitutionality of certain sections of the Improvement Bond Act of 1915.

"In 1925 the City of Lakeport commenced proceedings under the Improvement Act of 1911 (Stats. 1911, p. 730; Deering's Gen. Laws, 1931, Act 8199) to improve Main street in said city. Its resolution of intention declared that the work would be paid for by special assessments levied upon an improvement district described therein. The contractors performed the required work, but the property owners failed to pay the assessments. Thereupon the contractors procured the issuance of bonds to them, evidencing the unpaid assessments, under the Improvement Bond Act of 1915 (Stats. 1915, p. 1441; Deering's Gen. Laws, 1931, Act 8209). Assessments which became due in 1927, 1928, and 1929 were not paid, and in accordance with section 12 of said act, a sale of the properties was held. No purchaser appeared, and the tax collector made an entry reciting a sale to the state. Petitioner became the assignee and holder of delinquent bonds in the principal amount of $9,755.33, and sought to compel the city to levy taxes to provide funds for the payment thereof. The petition alleges that the city and city treasurer have failed and refused to transfer money

from the city treasury into the bond redemption fund, and that the tax collector has failed to demand and the city has failed to levy or collect any tax to pay the delinquent assessments. Respondents demurred to the petition on three chief grounds: First, that the statute imposes no mandatory duty on the city to provide such funds by taxation; second, that if such a mandatory duty does exist, the statute imposing it is unconstitutional; and third, that if any such valid obligation exists, it is limited in amount to ten cents on each one hundred dollars of assessable property. The lower court in an elaborate opinion considered these issues, and held that sections 12 and 16 of the act were unconstitutional solely on the grounds that they constituted a denial of due process of law. We are unable to agree with this conclusion, and are of the opinion that the statute is valid . . .

"It is first necessary to state the important provisions of the statute. The Improvement Bond Act of 1915 provides a method of issuing bonds to represent assessments, the assessments being levied under some other statute such as the Vrooman Act of 1885, the Street Opening Act of 1903, or the Improvement Act of 1911. (Improvement Bond Act, secs. 1, 2.) These other statutes provide for the levy of assessments, and the Improvement Act of 1911 also permits bonds to be issued; but the assessments or bonds under said act are in specific sums on particular parcels of property, usually in odd denominations, and payable on varying dates. The Improvement Bond Act of 1915 provides for a more marketable type of security, bonds issued serially in even denominations, secured by assessments payable at the same time and in the same manner as general taxes. (Secs. 6, 8.) The unpaid assessments constitute a trust fund for the payment of principal and interest of the bonds. (Sec. 11[a].) When an assessment becomes due and is unpaid, the methods of enforcement indicated in sections 11, 12 and 16 become applicable.

"Section 12, which is the provision invoked by petitioner, reads in part as follows: 'Upon default in payment, the lands securing such instalments and assessments *shall be sold* in the same manner in which real property in such city is sold, for the nonpayment of general municipal taxes, and be *subject to redemption within one year* from date of sale

in the same manner as such real property is redeemed from such delinquent sale, and upon failure of such redemption shall in like manner pass to the purchaser. The *city may be the purchaser* at any delinquent sale in like manner in which it becomes or may become the purchaser of property sold for nonpayment of the general municipal property tax, and in the event of its so becoming the purchaser *shall pay and transfer into said redemption fund the amount of the delinquent assessment and of the delinquent interest* thereon upon which said sale is made. In cases where the municipal property tax is collected by county or city and county officials and sales for nonpayment of such taxes are made to the state, the state shall be the purchaser at any such sale hereunder, but shall hold the title acquired at such sale upon behalf of the city and shall account to the city for any moneys received upon redemption or from the sale of such property, *the city* for the purposes of this act *being deemed the real purchaser.*' This last provision applied to respondent city, the taxes of which are collected by the county tax collector. The section further provides: 'In the event of there being *no available funds* in the treasury with which to make such payment, the tax collector shall delay the entry of the certificate of sale until such funds are available, *making demand in the meantime upon the city council that a suitable amount be included in the next tax levy for* the purpose of providing funds with which to make such payment; provided, however, that the period of redemption from such tax sale shall not be extended thereby nor the rights or privileges of the property owner be thereby in anywise affected.'

"Section 11, subdivision (c), provides that for nonpayment of any assessment or instalment, upon order of the city council, the same may be collected by a foreclosure suit in the superior court. This is declared to be 'a *cumulative remedy*'.

"Section 16, subdivision (a), provides: 'The city council *may,* and in the event of demand by the tax collector therefor as provided in section twelve hereof *must,* at the time of fixing the annual tax rate and levying the taxes to be collected for general municipal purposes, levy a *special tax* upon the taxable property in the city for the purpose of paying for the lands *purchased or to be purchased* at such

tax sales, but not to exceed for each local improvement *ten cents on each one hundred dollars of assessable property.'*

"These are the relevant provisions of the statute which is under dispute. The attack which respondents make upon it relates to its constitutionality, and also to its interpretation. Numerous *amici curiae* have appeared on both sides of the controversy, and these are not wholly in agreement upon the grounds for their respective positions. However, as to the constitutional questions, there is no dearth of authority in point, and we therefore proceed first to their solution.

 "Article XI, section 12, of the California Constitution, reads as follows: 'The *legislature* shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other *municipal purposes,* but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.' The contention of respondent is that the statute violates this section in that the legislature has imposed a tax upon the property within the city for a purely municipal purpose. But it is clear that the legislature has not, by sections 12 and 16, levied a tax. It has merely fixed the liability of the city to pay for property purchased, and has required the city to levy and collect taxes in an amount suitable for this purpose. In several cases arising under statutes having similar provisions, it has been held that there was no interference with the powers of the municipality. (*MacMillan Co.* v. *Clarke,* 184 Cal. 491 [194 Pac. 1030] ; *People* v. *Lodi High School Dist.,* 124 Cal. 694 [57 Pac. 660] ; *Hallahan* v. *City of Port Angeles,* 161 Wash. 353 [297 Pac. 149].) In the last-named case the court said (297 Pac. 150) : 'Nowhere in the act is there any imposition of a tax upon the city, or the inhabitants thereof, but the act makes it a condition precedent to the ordering of a local improvement, and the payment thereof by local assessments, that the guaranty fund shall be created. The city may or may not order a local improvement, but, if it does, the assessment for the benefit of the guaranty fund must be made, and this is imposed by the city and not by the act of the legislature. Since the tax is imposed by the

city and not by the legislature, the act is not in conflict with . . . the Constitution. . . . '

■ "Section 13 of the same article of the Constitution is also invoked by respondents. It provides that the legislature 'shall not delegate to any special commission, private corporation, company, association or individual' the power to levy taxes or assessments. This section is inapplicable to a municipal corporation, and hence constitutes no objection to the statute. (*Gadd* v. *McGuire*, 69 Cal. App. 347 [231 Pac. 754]; *City of Oakland* v. *Garrison*, 194 Cal. 298 [228 Pac. 433].)

■ "Article IV, section 31, of the Constitution, prohibits any gift or loan of public moneys; and it is argued that if the city is compelled to pay the delinquent assessments, it will thereby make a gift of public funds to private bondholders. This precise question was considered by us in *Stege* v. *City of Richmond*, 194 Cal. 305 [228 Pac. 461], and we there said (194 Cal. 318) : 'The argument assumes that in the improvement of the streets the work is a private matter. On the contrary, such work is for a public purpose. The city might have expended its general funds for the purpose.' It is well settled that funds directed toward a public purpose are not within the constitutional prohibition merely because of incidental benefits to individuals. (*Veterans' Welfare Board* v. *Jordan*, 189 Cal. 124 [208 Pac. 284, 22 A. L. R. 1515].) In a similar case, *Stanley* v. *Jeffries*, 86 Mont. 114 [284 Pac. 134], the court said (284 Pac. 138) : 'But the laying out and improvement of streets, alleys, sewers and the like is essentially a public purpose benefiting the entire community although the work is done in but a portion of the city, and in the absence of any legislative restriction, each portion of the city might be thus improved at the general public expense, and no taxpayer could be heard to complain thereof. In other words, in order to erect any public improvement by the creation of special improvement districts, both general benefits to the municipality and special benefits to the particular property must be conferred . . . When, therefore, the legislature provided that, as to special improvement districts created in the future a fund shall be created to insure the prompt payment of bonds and warrants issued in payment of such improvements, it but modified the special improvement dis-

trict law to impose upon the general public within the municipality a conditional obligation to pay a small portion of the cost of erecting the public improvement, whereas it might have lawfully imposed a much greater burden upon the municipality. . . . That the purchasers of bonds or warrants shall in the future have greater security for the payment thereof than they have had in the past, is but incidental to the public purpose of the act before us, and does not militate against its validity.' (See, also, *Imboden* v. *City of Bristol*, 132 Tenn. 562 [179 S. W. 147].)

█ "Article XI, section 18, of the Constitution, prohibits a city from incurring 'any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors. . . . ' It is contended that the liability imposed by sections 12 and 16 of the act is violative of this provision. The answer to this objection has already been given in several prior decisions in this state, and it is briefly, first, that the constitutional provision does not apply to an obligation or liability imposed by law as distinguished from one incurred voluntarily by the municipality; and second, that the liability under the act is not direct, but dependent upon several *contingencies*, namely, that the assessment become delinquent; that no person appear at the sale to purchase the property; and that the owner fail to redeem it after sale.

"The rule that the inhibitions of the constitutional debt limit do not apply to contingent obligations has long been settled in this state. In *Doland* v. *Clark*, 143 Cal. 176 [76 Pac. 958], where a city by certain contracts agreed to pay for certain services for five years at a monthly rate, it was held that there was no violation of article XI, section 18, the court saying: 'It is evident that they (the contracts) did not create any liability at the time they were executed, except a contingent future liability. . . . The amounts to become due on completion of the contracts by appellant might never become a liability upon the city. A sum payable upon a contingency is not a debt nor does it become a debt until the contingency happens. . . . There may be ample funds to pay the rental when it accrues, as provided in the contracts, if it ever should accrue.' (See, also,

*McBean* v. *Fresno,* 112 Cal. 159 [44 Pac. 358, 53 Am. St. Rep. 191, 31 L. R. A. 794].)

"It is contended, however, that the obligation, contingent at the time the bonds were issued, became fixed and certain upon the happening of the contingency—the occurrence of the delinquencies—and that the unconstitutionality thereof is now established. It is readily apparent that the happening of the contingency does not constitute the 'incurring' of a 'debt' within the meaning of the constitutional provision. The validity of the obligation must be determined as of the time it was incurred. Otherwise, the whole doctrine of contingent liability is repudiated, since upon the happening of the contingency an obligation validly assumed becomes illegal. Cases from other jurisdictions, involving the contingent obligation of a municipality to meet delinquencies in a bond redemption fund, have uniformly held that no violation of constitutional debt limitations resulted. (See *Comfort* v. *City of Tacoma,* 142 Wash. 249 [252 Pac. 929]; *Kelly* v. *City of Sunnyside,* 168 Wash. 95 [11 Pac. (2d) 230]; *Corey* v. *City of Fort Dodge,* 133 Iowa, 666 [111 N. W. 6].)

"A more conclusive answer to the objection is found in the rule that the constitutional debt limit applies only to obligations voluntarily assumed by the city, and not to those imposed by law. The general principle is well settled. In *Lewis* v. *Widber,* 99 Cal. 412 [33 Pac. 1128], the constitutional provision was held inapplicable to salaries of public officers fixed by statute. In *City of Long Beach* v. *Lisenby,* 180 Cal. 52 [179 Pac. 198], it was held inapplicable to a liability resulting from a judgment against the city for a tort. (See, also, *Mills* v. *Houck,* 124 Cal. App. 1 [12 Pac. (2d) 101].)

"That the present obligation to feed the bond redemption fund by taxes is not voluntary, but imposed by statute, seems too clear for dispute. It is true that the city might have accomplished its street work by a general tax levy, or left it undone altogether. But the statute under which the city acted was intended to provide a reasonable method of doing street work, and no penalty should be imposed upon it for availing itself of the procedure. By doing so, it did not voluntarily incur an obligation. At the time it commenced the work, the liability was contingent only. Later,

when the contingencies occurred, a liability was imposed upon the city by the statute, and not by any voluntary act on its part. This point has already been considered and determined by the decisions in three prior California cases, each dealing with the statute now before us. In the first of these, *Federal Const. Co.* v. *Wold,* 30 Cal. App. 360 [158 Pac. 340], the court observed that the liability under the Improvement Bond Act of 1915 was contingent and hence not within the constitutional restriction. The opinion also states (30 Cal. App. 361): ' . . . it has been held that this section of the Constitution only refers to the acts or contracts of a municipality, and not to the liabilities which the law places upon municipalities. (*Lewis* v. *Widber,* 99 Cal. 412 [33 Pac. 1128]; *Welch* v. *Strother,* 74 Cal. 413 [16 Pac. 22]; *Cashin* v. *Dunn,* 58 Cal. 581.' In the second case, *Stege* v. *City of Richmond,* 194 Cal. 305, 318 [228 Pac. 461], we said: 'The city might have expended its general funds for that .purpose. It was not compelled to do so and when it elected to proceed under the general street improvement laws, it simply adopted the means provided by law whereby it might in accordance therewith exercise a public function without incurring a contractual liability such as is contemplated under section 18 of article XI of the Constitution and the Bond Act of 1901. When the city elects to proceed under said act it assumes the burden of discharging its duties thereunder to the end that the assessment may be enforced. (See *Federal Const. Co.* v. *Wold,* 30 Cal. App. 360 [158 Pac. 340].)'

"The third case, *City of Pasadena* v. *McAllaster,* 204 Cal. 267 [267 Pac. 873], is cited to us by both petitioner .and respondents. In it this court gave full consideration to the particular question now before us, and declared the principle hereinbefore stated. The facts were peculiar in that certain land *owned by the city* had been included in an assessment district. It was held that the liability to meet the *assessments* on such land was *direct* and not contingent. This determination was carefully limited to municipally owned property, for as to such property the municipality assumed a primary liability to pay the full amount of the assessment, just as any other land owner, instead of a contingent liability to feed a bond redemption fund in the event of delinquencies. In distinguishing *Stege* v. *Rich-*

*mond, supra,* and approving *Federal Const. Co.* v. *Wold, supra,* we said (204 Cal. 277) : 'In the Federal Construction Company case it was held that the obligation of the municipality to purchase all property offered at delinquent sales for the nonpayment of street assessments, in the absence of other purchasers, pursuant to the Improvement Act of 1911 (Stats. 1911, p. 730), and the Improvement Bond Act of 1915 (Stats. 1915, p. 1441), was an obligation imposed on the city by law and was not a liability prohibited by the constitutional provision. In such a case the payment out of the public treasury is for the purpose of a *loan or advancement* to facilitate and make effectual the proceedings under the act *and which the city later may recover.'* (Italics ours.)

"The foregoing decisions, in our opinion, have established the validity of the bonds as against this ground of attack.

■ ' "It is finally urged by respondent, and the lower court held, that sections 12 and 16 of the statute constitute a denial of due process of law in violation of both the California and United States Constitutions. The theory is that if all the property owners in the city are to be taxed to meet the delinquent assessments, those outside the district are, in effect, being subjected to an *assessment* in the guise of a *tax;* and that such an assessment is invalid where they have had no notice or hearing as to any benefits which they are to derive from the particular improvement. The conclusion of the lower court that the tax was, in fact, an assessment, is unwarranted. The overwhelming weight of authority supports such a tax on two chief grounds: First, where a tax is imposed upon all property without regard to benefits received, it is a tax and not a special assessment, regardless of its purpose; and second, where a general tax is levied to meet delinquencies in assessments for local improvements, there is no necessity for notice and hearing. The basic principle was clearly stated in a decision of this court: 'Where . . . the burden is imposed upon all of the property in the district, real and personal, according to its value and not upon the basis of special benefit it is clear that the legislature regarded the burden as a general tax and not as a special assessment. This is so even though the tax be imposed for the purpose of constructing a public improvement which may confer greater benefits on one class

of persons or property than on another.' (*Anaheim Sugar Co.* v. *County of Orange,* 181 Cal. 212, 216 [183 Pac. 809].) In *People* v. *Whyler,* 41 Cal. 351, 354, the court said: 'The funds to pay for the grading of a street, may be raised by taxes levied upon all the property of a town, should the law so direct; but the tax does not become an assessment, because the latter is the mode usually adopted to raise the funds for that purpose. There is no sufficient reason for holding that the charge is not, what the legislature declared it to be—a tax.' (See, also, *Williams* v. *Corcoran,* 46 Cal. 553; *Sinton* v. *Ashbury,* 41 Cal. 525; *Cowart* v. *Union Pav. Co.,* 216 Cal. 375 [14 Pac. (2d) 764, 83 A. L. R. 1185].)

"In other jurisdictions the precise question has been presented, namely, whether a municipality may constitutionally levy a general tax to meet delinquencies in special assessments for local improvements; and it has been uniformly decided in the affirmative. In *Wicks* v. *Salt Lake City,* 60 Utah, 265 [208 Pac. 538], the statute provided for improvement bonds payable out of special assessments against the property benefited, but provided also. for a general tax to create a *guaranty fund,* to meet bond payments whenever the money derived from assessments proved insufficient. It was objected that the general taxing power could not be used to guarantee special improvement bonds without submitting the question to a vote. The court upheld the statute, saying (208 Pac. 540) : 'The city had the undoubted right, if it chose so to do, to provide for the lighting of the street in question and ease the burden thereof on the taxpayers of the entire municipality. It was not under the .necessity of creating a special improvement district at all. It was not incumbent upon the city to impose the burden exclusively upon the owners of the abutting property. How, then, can it be consistently contended that the city is without power, especially when authorized by the legislature, to provide a special guaranty fund for the payment of the bonds in question, and interest, in the remote contingency that the necessary funds cannot be obtained from assessments made upon the abutting property?' The same question, and the same answer are found in *Comfort* v. *City of Tacoma,* 142 Wash. 249 [252 Pac. 929, 930] : 'It is next urged that to tax appellants' prop-

erty, which receives no special benefit, to guarantee a payment of bonds issued against other property, is contrary to law, because the whole theory of local assessments is one of special benefits to the property assessed. But this is not a special assessment. The city has the right to initiate local improvements and to pay the whole cost thereof out of general taxes. This tax is imposed on all alike, and is general in its application.' To the same effect are numerous other decisions. See *State* v. *Board of Commrs.*, 124 Ohio St. 174 [177 N. E. 271]; *Stanley* v. *Jeffries*, 86 Mont. 114 [284 Pac. 134, 70 A. L. R. 166]; *Klemm* v. *Davenport*, 100 Fla. 627 [129 So. 904, 70 A. L. R. 156]; and cases collected in note, 70 A. L. R. 176. These decisions establish the principle that where public improvements of the character under consideration could be made by the use of ordinary funds derived from general taxation, without notice and hearing as to individual benefits resulting therefrom, deficiencies in any fund raised by local assessments may likewise be met by general taxation. It should be noted, also, that the method employed by our statute is in effect an *advancement* of funds, which the city may normally be expected to recover upon resale of the lands secured at the delinquent sales. (See *Pasadena* v. *McAllaster, supra;* *Municipal Imp. Co.* v. *Thompson,* 201 Cal. 629 [258 Pac. 955].)

■ "We come now to the final problem, that of interpretation of sections 11, 12 and 16 of the statute, and the relation each bears to the others. It is first contended by respondents that there is no mandatory duty to levy taxes under sections 12 and 16, since the city may, at its election, proceed to foreclose under section 11 (c). The answer to this is found in the statute itself, which expressly declares the provision for foreclosure to be a cumulative remedy. It is different in character and procedure, and is slower, more expensive and less efficient than the tax sale. While it may perhaps be resorted to either before or after a tax sale, the commencement of foreclosure proceedings cannot, under the act, be deemed an excuse for nonperformance of any duty under sections 12 and 16, to levy taxes to pay for property purchased. Under section 12 the city, through the agency of the state, becomes the real purchaser of the property at the sale. It thereupon becomes the duty of the

city, as such purchaser, to pay the amount of the assessment into the redemption fund; and if it has no funds with which to do so, then the taxing provisions are applicable. We find no merit in this point.''

 The other point, in our opinion, presents the most difficult question in this case. Section 12 provides that when there are no available funds in the city treasury with which to pay for property purchased at the delinquent sale, the tax collector shall make demand upon the city council that a ''suitable amount'' be included in the next tax levy to provide funds with which to make such payment. Section 16, subdivision (a), states that the city council must, upon demand by the tax collector as provided in section 12, levy a ''special tax'' for the purpose of paying for lands ''purchased or to be purchased'' at such tax sales, but ''not to exceed for each local improvement ten cents on each one hundred dollars of assessable property''. The question is whether section 16 (a) operates as a limitation on the amount of tax, so that the maximum which might be levied each year for the purposes stated would be ten cents on each one hundred dollars of assessable property. This issue has been briefed and argued several times by able counsel for the parties and *amici curiae*, and it may be reasonably concluded that the various possible interpretations of these sections have been fully explored. Notwithstanding this thorough consideration, there remains the gravest doubt as to the intention of the legislature to provide an unlimited tax, and we have finally come to the conclusion that this doubt must, in accordance with settled principles, be resolved against the taxing power and in favor of the taxpayer.

The arguments of counsel for the bondholders in favor of an unlimited tax proceeds by pointing out that the city must, under section 12, purchase the property at the sale, and pay the delinquent assessments; that in order to do so, it must transfer available funds from its treasury into the bond redemption fund; and that the tax collector must then make demand for a tax levy in a ''suitable amount'' to provide funds with which to make such payment. From these provisions of the statute they draw the conclusion that there is a mandatory duty on the part of the city to meet by a sufficient tax levy the obligation assumed by the

purchase of the lands. Under this theory, section 16 (a) is explained chiefly as a means of collecting limited sums in anticipation of the *future* purchase of lands.

The objection to this construction is that it gives too much effect to section 12, and not enough effect to section 16 (a). Section 12 provides that when there are no available funds in the treasury, the tax collector shall delay the entry of the certificate of sale until such funds are available, "making *demand* in the meantime upon the city council that a suitable amount be included in the next tax levy for the purpose of providing funds with which to make such payment". It will be observed that this section provides for a *demand* for a tax levy, but not for a tax. The section gives no authority to the city council to levy any tax. It may be argued that it would be absurd to require the city to purchase the property, and then provide for no means of payment; and that from the obligation to purchase and the duty of the tax collector to make a demand for a tax levy, the municipal power to levy the tax may be *inferred*. ■ But the imposition of a tax by inference or implication, no matter how logical or reasonable it may seem, is universally condemned by the authorities, which lay down the rule that the tax must be based upon an express statutory authority, and that doubts will be resolved against the taxing power. (See *Merced County* v. *Helm,* 102 Cal. 165 [36 Pac. 399]; *Connelly* v. *San Francisco,* 164 Cal. 101 [127 Pac. 834]; *Estate of Potter,* 188 Cal. 55 [204 Pac. 826]; *Whitmore* v. *Brown,* 207 Cal. 473 [279 Pac. 447].) In any event, the supposed necessity for the inference of the power to tax from the provisions of section 12 arises from a failure to give adequate consideration to section 16 (a).

Section 16 (a) does expressly authorize the levy of a tax. It provides that the city council "may" levy "a special tax" to pay for lands "purchased or to be purchased". The authority thus given is within the discretion of the council to exercise, and there is little doubt that under that authority, the city may build up a fund in anticipation of the *future* purchase of lands. But this is not the whole effect of section 16 (a). It provides that the city council "may, *and in the event of demand by the tax collector* therefor *as provided in section twelve* hereof *must*" levy

the tax. Here we have a mandatory requirement. It directly refers to section 12; it expressly covers the subject upon which section 12 is silent—the power to levy a tax; and to remove any doubt as to the interdependence of the two sections, it conditions the levy of the tax under section 16 (a) on the demand of the tax collector under section 12.

Under this analysis, which gives to both sections the meaning apparent therefrom, and does not extend nor diminish the effect of either by implication, we have a construction which is not unreasonable, and which violates no rule of statutory construction. Such an interpretation, moreover, avoids the cardinal error of imposing a tax by inference from language which does not clearly authorize it. There are, perhaps, as contended by petitioner, certain practical difficulties which may follow from this conclusion. Thus, where there are ample funds in the treasury, previously raised by taxation, the whole of the delinquent assessment must be paid out of such funds, section 12 providing that the city "shall pay and transfer into said redemption fund the amount of the delinquent assessment and of the delinquent interest thereon"; but if the treasury is depleted, only the ten-cent levy under section 16 (a) can be made; with the result that the immediate payment in full of the delinquent assessments, a duty resting upon the city under section 12, is dependent upon the fortuitous circumstance that money is in the treasury and available at the time of purchase. But upon reflection, this is not wholly unreasonable. It may well be that the city should be required to meet its obligation under the statute in full with available funds, if they are sufficient in amount, but that it should not be forced to meet it, when sufficient funds are not available, by a ruinous tax. Such a distinction could well have been within the contemplation of the legislature, and the alleged inconsistency constitutes no fundamental objection to the construction we have adopted.

It follows that the statute under consideration is constitutional, and that if the allegations of the petition are true, a mandatory duty rested upon respondents to levy and collect a tax to meet the delinquent assessments, such tax, however, being limited to ten cents on each one hundred dollars of assessable property, as provided in section

16 (a) of the act. The judgment is therefore reversed, with directions to the lower court to permit petitioner, if it desires, to amend its petition in accordance with the conclusions reached herein, and thereafter to proceed to a trial of the issues, if any, raised by the answer thereto.