[S. F. No. 15747. In Bank.—March 29, 1937.]

CITY OF LOS ANGELES (a Municipal Corporation), Petitioner, v. LLOYD ALDRICH, City Engineer, etc., Respondent.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Robert J. Stahl, Deputy City Attorney, for Petitioner.

Bottsford & Hurtt for Respondent.

SHENK, J.—The City of Los Angeles filed in this court a petition for a writ of mandate to require the respondent city engineer to prepare an assessment diagram of the land within Municipal Improvement District No. 37 which would become subject to refunding assessment provided by resolution of the city council pursuant to the Refunding Assessment Bond Act of 1935. (Stats. 1935, p. 2023.)

Municipal Improvement District No. 37 was formed under the Municipal Improvement District Act of 1915 (Stats. 1915, p. 99). On January 1, 1925, bonds of that district in the principal sum of $500,000 were issued and sold. The bonds were in even denominations of $1,000 and fifty thereof were payable each year commencing January 1, 1929, and ending January 1, 1938. The proceeds of the bonds were used to defray the cost of certain public improvements in said district. Special assessment taxes levied on the lands in the district were collected, but on March 19, 1936, delinquent assessments in the sum of $350,588.19 remained levied and uncollected. On that date the balance in the bond redemption fund was sixteen cents. Of a total of $316,000 of bonds still outstanding and unpaid there was then matured and due on the principal of said bonds the sum of $216,000, and on the interest, $22,260. It is stated that during the five preceding years the tax delinquency in the district averaged about eighty per cent. It is thus seen, without further detailed statement, that a condition existed similar to that described in the case of *County of Los Angeles* v. *Rockhold,* 3 Cal. (2d) 192 [44 Pac. (2d) 340, 100 A. L. R. 149].

On March 19, 1936, the council initiated proceedings by resolution of intention to refund the district's bonded indebtedness pursuant to the Refunding Assessment Bond Act of 1935. The present petition was filed to test the constitutionality of that act. The act is entitled: "An act to provide for the refunding of the bonded indebtedness of special improvement districts, the bonds of which are payable from taxes or from special assessments levied wholly or partly in

accordance with the assessed value of lands and for the issue and sale or exchange of refunding bonds and the retirement of unpaid bonds of such districts and the cancellation of unpaid taxes and assessments of such districts, and for the levy of assessments and reassessments to pay such refunding bonds and to enforce the liens of such assessments and reassessments, and to provide for contributions of public funds to assist in such refunding or the payment of refunding bonds, and for proceedings to test the validity of such refunding and assessment or reassessment proceedings and the use of the bankrupt laws of the United States of America in any refunding.''

The act is similar in purpose to the Assessment Bond Refunding Act of 1933 (Stats. 1933, p. 1915), as amended by Statutes of 1935, p. 1999, with certain differences to be noted. In the case of *County of Los Angeles* v. *Jones*, 6 Cal. (2d) 695 [59 Pac. (2d) 489], we held that the 1933 act as so amended was constitutional and valid. The 1935 amendment of that act incorporated certain features, especially the requirement of the consent of a majority of the landowners in the district and adequate provision for retiring the bonds of nonconsenting bondholders, the omission of which from the 1933 act was held in the Rockhold case to constitute an impairment of the contract rights of the landowners and the bondholders. The 1935 act here under consideration incorporates the features which were omitted from the 1933 act and by inclusion in the 1935 amendment were held to have overcome the objections to the 1933 act on constitutional grounds. We consider the foregoing cited cases, together with the later decision in *City of Dunsmuir* v. *Porter*, 7 Cal. (2d) 269 [60 Pac. (2d) 836], a complete answer to the respondent's similar constitutional objections to the Refunding Assessment Bond Act of 1935.

It is not contended that the steps leading up to the request made on the respondent to prepare the assessment diagram have not been duly and regularly taken. It appears that owners of more than fifty per cent of the land in the district have filed written consents to the proposed plan of refunding.

The present act (Stats. 1935, p. 2023), does not provide for a vote of the electors of the district to effectuate the change in the contract of the landowners. It provides that the written consent of the owners of a majority of the land area in the district shall bind all the owners of land in the district. It also makes provision for the consent of the bond-

holders and the retirement of bonds of nonconsenting bond-holders. Opportunity is given for a hearing of objections pursuant to notice. It is now contended that the consent of the electors of the district is necessary because the issuance of the *ad valorem* assessment bonds under the 1915 act required the consent of the electors and that the electors are therefore a necessary consenting party to the refunding proceeding. In the Rockhold case it was held that the electors could not bind the landowners to a refunding contract except where the original bonds were issued in response to a provision of law calling for a majority vote of the electors. The 1933 act there involved was thereupon changed by amendment to conform to the view there held that the appropriate consent to a change in the landowners' contract was the consent of the landowners, and that the consent of owners of a majority of the land in the assessment district was sufficient to bind the whole. The change in that law was effected accordingly and was upheld in the case of *County of Los Angeles* v. *Jones, supra*. We were not then of of the opinion and do not now entertain the view that the vote of the electorate is necessary to lend support to the validity of the refunding proceeding, if the binding consent be obtained of those whose rights would be adversely affected. The landowners are the persons who might be so affected and are also those who might be benefited by the refunding proceeding because of the reduction in the burden of taxation brought about by a substantial discount in the principal and interest of the remaining unpaid assessment bonds and the restoration to the tax rolls of a large proportion of the lands in the district which had theretofore been removed therefrom upon sales for delinquencies and which thereafter will virtually be kept upon the tax rolls by the shortening to one year of the period of redemption after the sale of the property for delinquencies. This benefit, the resulting increase in public revenues, and the prevention of the pyramiding of excessive taxes on a small proportion of property, have been recognized in the decisions herein cited, and must be deemed to answer two objections made on this proceeding, viz., that the consent of the electors of the district to refunding the assessment bonds was not provided for, and that the majority consent of the landowners is insufficient to bind the minority. In the Rockhold case it was declared that a provision calling for the consent of the owners of a majority

of the land area in the district would be sufficient to bind the landowners to a shortening of the period of redemption after sale of the property for nonpayment of the refunding assessment. That statement was reiterated and the reduction of the period of redemption provided by the 1933 refunding act (Stats. 1933, p. 1915), was upheld in the Jones case after the amendment of 1935 (Stats. 1935, p. 1999) providing for such majority consent. ■ By supplemental brief the respondent urges that it has not been made clear by any of the prior decisions that such majority consent was sufficient to bind the minority landowner to the change in the period of redemption. The general language of the Rockhold case and the more specific holding in the Jones case would seem to be adequate to that purpose. But to remove all doubt on the subject we further state that the so-called vested right in the period of redemption under these refunding statutes may not properly be considered apart from the contract itself which is changed by the majority consent. The period of redemption is merely one of the incidents of the contract and when the contract is changed by consent of the parties as provided by the statute such consent carries with it the change, if any, in the period of redemption and is applicable to any and all landowners affected thereby.

■ It is urged that the act is void because it provides for a refunding proceeding involving more than one jurisdiction. Where the *ad valorem* assessment district extends into both incorporated and unincorporated territory, section 5 of the act designates the legislative body which conducted the original proceedings as the body to conduct the refunding proceeding. By section 24, at any tax delinquent sale which is held pursuant to the act, the county is deemed the real purchaser of delinquent property lying within unincorporated area and, as provided by section 25, must levy a limited tax not to exceed ten cents on each one hundred dollars of assessable property, to pay for the lands purchased or to be purchased at such tax sales. It is contended that this contemplates a gift of public money and a pledge of the county's credit to a municipal corporation which has conducted the original proceedings in violation of section 31 of article IV of the Constitution. The same general answer might be made to this contention as is given in the foregoing cited cases, viz., that such funds are used for a public purpose, for which the county might have used them in the first instance,

and are therefore used for the benefit of the county and not of a city or any individual. However, in the present case the improvement district does not extend beyond the territorial limits of the city. Any different answer which might be made to the question in a proper case, pursuant to the provisions of section 31 of the Refunding Assessment Bond Act of 1935 would not render the balance of the act unconstitutional. ■ Further, there is not involved herein a pledge of the credit of the city to the holders of the refunding bonds. This contention has been answered in the case of *County of Los Angeles* v. *Jones, supra.* The principal difference between the refunding act there considered and the refunding act here involved is that the former provided for a plan to substitute, by the refunding proceeding, for the *ad valorem* assessment the old system of a specific assessment lien upon each parcel of land in the district evidenced by a bond issued against the particular parcel. The present refunding act adopts the alternative system by which the assessments are pooled and the bonds issued in even denominations, maturing serially, and are payable from a special fund fed by the collection of the taxes assessed against each parcel commensurate with the benefits received. The present refunding act, however, eliminates the infirmities of the 1915 act in so far as maintaining the solvency of the fund is concerned and which were pointed out in the case of *American Co.* v. *City of Lakeport,* 220 Cal. 548 [32 Pac. (2d) 622], *Hammond* v. *City of Burbank,* 6 Cal. (2d) 646 [59 Pac. (2d) 495, and *Kerr Glass Mfg. Corp.* v. *City of Buenaventura,* 7 Cal. (2d) 701 [62 Pac. (2d) 583]. By section 24 of the refunding act it is provided that the city or county, pending redemption or resale of the property purchased by it at tax delinquent sales, shall transfer to the bond redemption fund the amount of any future delinquent assessments and interest, which sums must be paid by the redemptioner or purchaser upon a redemption or resale of the property. Section 25 places the duty upon the legislative body, upon demand of the tax collector, when levying taxes for general municipal or county purposes, to levy a special tax, not exceeding ten cents on each one hundred dollars of assessable property within the city or county, for the purpose of paying for the lands purchased, or for the purpose of paying installments of the assessments and interest which by section 24 the city or county is required to pay. It is contended that this added

obligation of the city creates a liability not assumed in the first instance and renders the provision one in violation of section 31 of article IV of the Constitution as a pledge of the credit of the municipality. Upon analysis the contention does not have merit. The additional provision in the 1935 act makes compulsory what the legislature merely authorized by the similar provision in the 1915 act (Stats. 1915, p. 1441), viz., the continuing duty to levy and collect in each year the special ten cent tax to provide advances to the bond redemption fund until amounts equal to the purchase price of lands sold to the city at tax delinquent sales and any future delinquent assessments and interest thereon have been transferred to the fund. Reimbursement to the city is realized upon redemption or resale of the property. Such advances have been approved in the cases last cited, and were held not to violate the specified inhibition in the Constitution. The advances provided by the present act partake of the same character. They do not increase the obligation of the city and therefore likewise should be held not an infringement of the constitutional provision. ■ This also answers the contentions of the respondent that the duty to transfer funds for such purpose is contrary to the provisions of section 18 of article XI prohibiting the incurring of any indebtedness or liability exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the qualified electors. (*American Co.* v. *Lakeport, supra.*) The respondent relies on *City of Pasadena* v. *McAllaster*, 204 Cal. 267 [267 Pac. 873]. In that case municipally-owned property was included in the assessment district, and the advances required to be made left the coffers of the city irrevocably. The decision in that case recognized that the inhibition did not apply where municipally-owned property was not included in the assessment district. The same distinction was made in the case of *American Co.* v. *City of Lakeport, supra.*

■ The only remaining question is whether the refunding act operates uniformly. The respondent contends that it does not. Section 7 provides the method of computing the proportion of the refunding assessment to be realized from each parcel of land in the improvement district. To the amount of the assessment to be levied under the act is added the sum of all amounts, including interest and penalties, paid into the interest and sinking fund of the district upon taxes

or assessments levied upon the land in the district to raise funds to pay the principal or interest of the bonds being refunded. The resulting total is spread over the lands of the district in proportion to the benefits received from the improvement to pay the cost of which the refunded bonds were issued. The landowner is entitled to a credit or deduction of any sum, including any interest and penalties, theretofore paid into the interest and sinking fund of the district upon an assessment or special tax levied upon his land to pay the principal and interest of bonds of the district. The respondent contends that the owner of improved lands is discriminated against in favor of the owner of unimproved lands because there is no provision to credit special taxes levied on such improvements and collected and transferred by the city to the bond fund. By the provisions of the Municipal Improvement District Act of 1915 (Stats. 1915, p. 99, sec. 9), all of the taxable property in the district was subject to the special tax levied to amortize the principal and interest of the improvement bonds. The act in this respect differs from the Municipal Improvement District Act of 1927 (Stats. 1927, p. 1351), pursuant to which the levy to defray the cost of the improvement is laid upon land only. It may not, however, be successfully contended that the refunding statute does not have a uniform operation as applied to the refunding of bonds of districts organized under the 1915 act. The basis of the refunding act, as also the act of 1927, is the recognition that land, being permanent, is the recipient of the benefit. Inasmuch, therefore, as the balance of the cost of the improvement is provided to be laid upon land only, the prior payments of taxes on such land become the natural subject of credit in arriving at a method of computing the proportion of the tax to be borne by each parcel of land. It is not apparent that, had the legislature provided an alternative method of computation which would also take into account taxes levied on improvements and personal property to pay the principal and interest of the improvement bonds, and similarly provided a credit therefor, the proportion to be paid by owners of improved land would be any less than the resulting proportion under the present method of computation. In other words, it should be assumed that had the legislature included a method of computation based on a credit for taxes paid on improvements and personal property, as well as on land, it would also have included for the purpose of com-

puting the percentage to be assessed against each parcel of land the amounts theretofore paid into the redemption fund from taxes on improvements and personal property. Under such a method the amount which would be assessed against the owner of improved land might conceivably even be higher. Furthermore, under the refunding act the landowners in the district are relieved from any future levies of taxes on improvements and personal property for the payment of principal and interest on the refunding bonds. We fail to perceive that there is any cause for complaint by reason of the method of computation of the assessment under the refunding act, or that the adoption of that method by the legislature should prevent a district organized under the 1915 act from invoking its salutary provisions. It necessarily follows that there is no discrimination against the owner of improved lands in the refunding proceeding.

The foregoing answers all of the questions raised on this proceeding, and leads to the conclusion that the Refunding Assessment Bond Act of 1935 is not unconstitutional for any of the reasons herein advanced.

Let the peremptory writ issue as prayed.

Thompson, J., Seawell, J., Curtis, J., Langdon, J., Waste, C. J., and Edmonds, J., concurred.