[L. A. No. 15860. In Bank.—November 19, 1936.]

KERR GLASS MANUFACTURING CORPORATION (a Corporation), Petitioner, v. CITY OF SAN BUENAVENTURA (a Municipal Corporation) et al., Respondents.

702

Thorpe & Bridges and Gerald Bridges for Petitioner.

Stacy C. Bates, City Attorney, Leon T. David and William Mackenzie Brown for Respondents.

SHENK, J.—The petitioner seeks the writ of *mandamus* to compel the respondents to levy a tax on all of the taxable property in the City of San Buenaventura sufficient to pay for all lands purchased by the city which were sold for delinquent improvement district assessment instalments in the years 1929 to 1935, inclusive, and to pay for all of such instalments which became delinquent on said lands subsequent to the sale thereof to the city. In the same proceeding the petitioner also seeks payment of $17,000 due on certain bonds held by it and payable out of the fund created for the redemption of bonds series "E" issued to discharge the cost of city improvement No. 201.

The street work known as city improvement No. 201 was authorized by the city council under the Improvement Act of 1911 (Stats. 1911, p. 730), and series "E" bonds were authorized, and issued pursuant to the Improvement Bond Act of 1915 (Stats. 1915, p. 1441). The bonds represented an obligation in the total principal sum of $132,-528.95. They were issued to mature in ten annual instal-

ments beginning July 2, 1929, with interest at 7 per cent per annum. The petitioner is the holder of eleven $1,000 bonds of the instalment due on July 2, 1932, and of six in the same denomination of the July, 1934, maturity. It is stipulated that there is due to the petitioner only the principal of said bonds, viz., $17,000. The bonds held by the petitioner were presented for payment to the city treasurer, but payment was refused because there was not sufficient money in the bond redemption fund to pay all of the outstanding and matured bonds of said series "E", although there was sufficient to pay the petitioner in full. Upon such refusal the petitioner commenced this proceeding.

During each of the years 1929 to 1935, inclusive, the city has become the purchaser of property in said improvement district sold for nonpayment of assessment instalments levied to pay the cost of said city improvement No. 201. It is alleged that the city has not paid into the bond redemption fund the amount of the delinquent assessments, penalties and costs which constituted in effect the purchase price of such lands at the time of sale thereof to the city; further that the city has also failed to transfer from the general fund to the bond redemption fund the amounts of assessment instalments falling due on said lands after such sale to the city. It is also alleged that in the years 1929 to 1933, inclusive, the tax collector has failed to file with the city council a demand that a suitable amount be included in the next tax levy to provide funds for transfer to the bond redemption fund wherewith to pay the purchase price of such lands sold to the city at delinquent tax sales. In August, 1934, such a demand was made by the tax collector on the city council, which thereupon included a tax levy of ten cents on each $100 of assessable property for the purpose stated. A similar demand in August, 1935, was met by a like levy. The petition shows that the respondents have offered to pay to the petitioner such proportionate amounts from said bond fund on account of interest and principal due it as the amount of such interest and principal bears to the total amounts of interest and principal on all of said bonds, series "E", still outstanding and unpaid.

The respondents have demurred generally and specially to the petition and filed an answer thereto. In their an-

swer the respondents allege the sum of $16,950.84 to be the total amount of initial delinquencies for which properties have been sold to the city for nonpayment of assessment instalments in 1929 to 1934, inclusive; that in 1934 and 1935 the city caused a tax of ten cents per $100 to be levied on all the taxable property in the city, from which it has so far realized the sum of $16,110.50 which has been paid into the bond redemption fund; that the total amount in the bond fund is the sum of $18,033.43; that but the sum of $860.34 remains unpaid into the redemption fund on account of the purchase price of lands so far sold to the city at delinquent tax sales; that only the amount of $5,796.45 is realizable from assessment instalments not yet due, making a total probable fund of $24,690.22 to meet obligations of principal and interest still unpaid and to become due on said bonds series "E" of more than $100,000; that there are no moneys in the general fund available for transfer to the bond redemption fund to meet delinquencies of improvement assessment instalments accruing against the land subsequent to the sale thereof to the city. The respondents aver that the sole reason for the inadequacy of the bond redemption fund is the failure of the landowners in said special assessment district to pay the instalments of the assessment levied to discharge the cost of such improvement; that approximately 85 per cent of the lands in the district are delinquent; that the value of the lands so delinquent is less than the total amount of delinquencies, penalties and charges accrued against them; that there have been no sales or redemptions of such lands and there are not likely to be any in the near future; and that the bond redemption fund is therefore insolvent. In its answer the respondent city admits its willingness and offer to pay the petitioner on a *pro rata* basis, computed on the ratio which the amount due to the petitioner bears to the total amount still unpaid on all outstanding bonds of series "E", including also those which have not yet matured.

The principal question for determination is whether the petitioner is entitled to payment in full from the bond redemption fund, there being sufficient funds for payment to it in full although not sufficient to pay in full all of the matured claims against said fund; or whether it must accept payment on some *pro rata* basis to be determined.

■ Preliminarily it must be said that the petitioner is not entitled to a direction for a levy of taxes sufficient to pay the delinquencies against the lands purchased by the city at delinquent tax assessment sales which occurred subsequent to the initial delinquencies which compelled the sale. It has so been decided in the case of *American Co.* v. *City of Lakeport,* 220 Cal. 548, 563 [32 Pac. (2d) 622] et seq. That case settled the interpretation of sections 12 and 16a of the Improvement Bond Act of 1915 to the effect that if there are no surplus moneys available in the general fund the city is not obligated to levy a tax for the purpose of procuring advances to the bond redemption fund wherewith to meet the amounts of assessment instalments falling due on the lands after the sale thereof to the city. The interpretation of those sections of the act by recent decisions limits the mandatory tax levy by the city to the ten-cent levy provided by section 16a. (*American Co.* v. *City of Lakeport, supra; Union Safe Deposit Bank* v. *City of Menlo Park,* 3 Cal. (2d) 264 [43 Pac. (2d) 811]; and Id.; (Cal.) 45 Pac. (2d) 347; *Southern California Roads Co.* v. *County of San Luis Obispo,* 4 Cal. (2d) 220 [48 Pac. (2d) 34]; *Griffith Co.* v. *County of Los Angeles,* 4 Cal. (2d) 222 [48 Pac. (2d) 35]; *Sawyer* v. *County of San Luis Obispo,* 4 Cal. (2d) 776 [48 Pac. (2d) 35]; *Thompson* v. *City of Compton,* 6 Cal. (2d) 666 [59 Pac. (2d) 505]; *Thompson* v. *City of La Mesa,* 9 Cal. App. (2d) 542 [50 Pac. (2d) 504].)

More recently in the case of *Hammond* v. *City of Burbank,* 6 Cal. (2d) 646 [59 Pac. (2d) 495], it was determined that not only was the ten-cent levy the only mandatory levy provided by the Improvement Bond Act of 1915, but that the purpose of the levy as provided by the act is limited and exclusive; that is, that the tax realized from the ten-cent levy may be used only to provide advances to pay the purchase price (the amount of the initial delinquent improvement assessment instalment, penalties and costs) of the lands sold to the city on delinquent tax sales.

■ A further review of the cited cases or of the pertinent sections of the Improvement Bond Act involved therein is unnecessary for the purpose of making the observation that the immediate and important result of such recent decisions, viz., that the land in the district is the

sole source of payment for the cost of the improvement and that the obligation of the municipality is limited merely to creating a revolving fund by certain authorized advances to the bond redemption fund, has a direct bearing upon the solution of the principal problem presented here.

Advances to the fund by the city are authorized to be made from two possible sources, one the mandatory levy not exceeding ten cents on each $100 of taxable property in the city, further limited by the amount required to meet the purchase price of lands sold or to be sold to the city at delinquent tax sales; and, second, the transfer of moneys from the general fund when there are surplus moneys available, as advances on the amount of improvement assessment instalments falling due on lands sold to the city subsequent to the delinquent tax sales. ■ That fact, together with the further holding in the case of *Hammond* v. *City of Burbank, supra,* that the duty of the city to levy and collect the ten cent tax is continuing only so long as advances to the redemption fund on account of the purchase price of lands sold to the city have not been made, and that the city may not "pyramid" the levies omitted in prior years, make manifest the preliminary conclusion that the petitioner is not entitled to have the respondents do more than levy a ten cent tax each year until such levy has realized moneys sufficient to advance to the bond redemption fund the purchase price of all land sold to the city at delinquent tax sales. This duty the city has performed and it is not shown that there are surplus moneys in the general fund available for transfer to the bond redemption fund for the payment of assessment instalments falling due on such lands subsequent to the delinquent tax sales. It follows that the petitioner is not entitled to a writ directing the respondents in respect to any tax levy or transfer of funds.

■ There remains for determination the principal question whether the petitioner is entitled to a writ directing payment to it in full of the sum of $17,000 due on the bonds held by it. If it is not so entitled, or if it is not entitled to any partial payment in excess of the offer made by the district and refused, its petition in this respect must also be denied. (*State* v. *Little River Drainage Dist.,* 334 Mo. 753 [68 S. W. (2d) 671, 679].)

The petitioner relies mainly upon the provisions of section 3 of the Improvement Bond Act of 1915, and upon the decision in the case of *Bates* v. *McHenry*, 123 Cal. App. 81 [10 Pac. (2d) 1038], in support of its contention that it is entitled to full payment from the fund without regard to the probability that there will not be sufficient funds realized from all available sources to discharge in full the principal and interest on all unpaid bonds of the series.

Section 3 of the act provides that the bonds and interest "shall be paid at the office of the city treasurer of said municipality who shall keep a redemption fund designated by the name of said bonds, into which he shall place all sums received by him from the collection of the assessments made for the payment of the cost of improvements upon which the bonds are issued and of the interest and penalties thereon and from which fund he shall disburse and *pay the said bonds and the interest due thereon upon presentation of the proper bonds and coupons;* and under no circumstances shall said bonds or the interest thereon be paid out of any other fund. Said city treasurer shall keep a register . . . and shall cancel and file each coupon and bond so paid." The petitioner contends that the italicized language of said section compels the same result as in the case of *Bates* v. *McHenry, supra.* That case involved section 52 of the California Irrigation District Law which provided that upon presentation of *any* bond or interest coupon, payment should be made from the bond fund. In the opinion it was pointed out that the particular language of the act, together with the further provisions that unpaid bonds and interest coupons should be registered and bear interest from the date of registration and creating an unlimited continuing obligation of the district to levy sufficient taxes to discharge the obligation in full, distinguished the facts from such cases as *Thomas* v. *Patterson*, 61 Colo. 547 [159 Pac. 34], and *Norris* v. *Montezuma Valley Irr. Dist.*, 248 Fed. 369, and compelled a conclusion that payment in full upon presentation was contemplated by the act even though the fund was at the time insufficient to discharge all the matured claims against it. The same court rendering the opinion in the case of *Bates* v. *McHenry, supra,* arrived at a contrary conclusion in the case of *Rohwer* v. *Gibson*, 126 Cal. App. 707 [14 Pac. (2d) 1051], following the cases dis-

tinguished in its previous opinion. The case of *Rohwer* v. *Gibson* involved the reclamation district laws of the state. There it was noted that the act involved made no provision for priority of payment where several bondholders were entitled to payment from a fund which was insufficient to pay all. It was further observed that the taxing power and consequently the fund realizable for application to bond principal and interest and out of which payment may be expected were limited to the benefits conferred upon the land assessed. A distinction was made between such a case, that is, where the general taxing power of the district was not made available to increase the fund applicable to discharge the principal and interest of the bonds, and *Bates* v. *McHenry, supra,* and such cases as *Meyer* v. *Porter,* 65 Cal. 67 [2 Pac. 884], and *Meyer* v. *Widber,* 126 Cal. 252 [58 Pac. 532], where the general taxing power of the district or other municipal body may be resorted to until all the bonds were fully paid. It was thereupon concluded that where the sources of the bond redemption fund were so limited and were not fortified by the authority to resort to a general or "inexhaustible" taxing power, the fund becomes a trust fund to be shared by all who hold claims against it without priority one over the other. Thus it was appropriately held that where such a fund was insufficient to pay in full all who had claims against it, the petitioner was entitled only to share ratably with the other bondholders. Cases are cited in the Rohwer decision at page 721 to the effect that payment in full to the petitioner will not be ordered where it appears that the moneys constitute a trust fund by virtue of the fact that the fund is not replenishable by an unlimited or so-called inexhaustible taxing power, even though the fund at the time of bringing suit is sufficient for such payment but not sufficient to pay all the outstanding matured claims against it. The weight of the authority which recognizes the distinction between the ability to replenish the fund from an inexhaustible or general taxing power and the cases where the taxing power or tax-collecting capacity is limited, unless the statutory provisions are clearly to the contrary, is in accord with the result in *Rohwer* v. *Gibson, supra.* Those cases further recognize that such result is proper whenever the fund so characterized as a trust fund is shown to be insufficient,

whether or not the district is actually insolvent, and regardless of the fact that previously matured bonds have been satisfied in full. (See, also, *State* v. *Carlton*, 103 Fla. 810 [138 So. 612]; *Moran* v. *State*, 111 Fla. 429 [149 So. 477], *State* v. *Little River Drainage Dist.*, 334 Mo. 753 [68 S. W. (2d) 671], and *State* v. *Duncan*, 334 Mo. 733 [68 S. W. (2d) 679], overruling *State* v. *Grand River Drainage Dist.*, 330 Mo. 360 [49 S. W. (2d) 121]; *Groner* v. *United States*, 73 Fed. (2d) 126; *Norris* v. *Montezuma Valley Irr. Dist.*, 248 Fed. 369; *Morris, Mather & Co.* v. *Port of Astoria*, 141 Or. 251 [15 Pac. (2d) 385]; *Lucas* v. *First Nat. Bank of Pawnee*, 171 Okl. 606 [43 Pac. (2d) 752]; *Meyers* v. *City of Idaho Falls*, 52 Ida. 81 [11 Pac. (2d) 626]; *Rothschild* v. *Village of Calumet Park*, 262 Ill. App. 96; note, 90 A. L. R., p. 717 et seq.) The trust status of the fund has been considered appropriate where it is theoretically replenishable by a so-called inexhaustible taxing power, but the exercise of that power is rendered fruitless by reason of economic conditions resulting in a tax-collecting incapacity. (*Morris, Mather & Co.* v. *Port of Astoria, supra;* see *Moran* v. *State, supra,* concurring opinion, 149 So., at p. 478; *State* v. *Lakeland,* 112 Fla. 224 [150 So. 508, 90 A. L. R. 704], opinion of Brown, J., dissenting in part.)

It is unnecessary to extend the discussion in view of the facts presented by the petition and answer and the direct bearing upon the solution of the problem resulting from the decisions in this state hereinabove cited which define the limited liability of the city under the Improvement Bond Act of 1915. As in the act involved in the case of *Rohwer* v. *Gibson, supra,* there is no provision in the Improvement Bond Act which can be interpreted to inhibit the settlement of the claims of all bondholders ratably when the necessity requires. The language in section 3 above quoted and relied upon by the petitioner, unaccompanied by any provisions which would give it a mandatory character, must be deemed to be directory only. In *Meyers* v. *City of Idaho Falls, supra,* a provision for payment in numerical order was held to be directory only and not to prevent the distribution of the moneys as a trust fund. Pursuant to direction for payment upon presentation, if it were possible for all bonds remaining unpaid to be presented simultaneously, the trea-

surer would find himself compelled to divide an insufficient fund ratably among all so presenting. The same duty arises to divide the funds ratably when it appears that there will not be sufficient to pay all bonds in full, whether or not all are technically presented for payment. No contention is made by the petitioner that there does not in fact exist an insufficiency resulting by virtue of the large percentage of delinquencies and the consequent inability of the city to realize from all available sources sufficient to pay all bonds in full from the redemption fund. ▮ With a large percentage of delinquencies and a reduction of the tax-collecting capacity to furnish a surplus in the general fund wherewith to replenish the bond redemption fund, either now or in the reasonably near future, by the amounts of improvement assessment instalments falling due on delinquent property subsequent to its sale to the city, it can scarcely be doubted that the city has properly declared the bond redemption fund insolvent. In such a case it may restrict payments from the bond redemption fund on a *pro rata* basis among the holders of all bonds remaining unpaid, whether or not the same have matured.

▮ The authorities herein cited support the conclusion that the question of the impairment of a contract right is not involved in the consideration of the problem. The limited liability of the city as defined herein and by the cases above cited was a part of the bond contract. The bondholders accepted the limitation that the principal and interest of the bond were payable exclusively from the redemption fund. (*Stege* v. *City of Richmond,* 194 Cal. 305 [228 Pac. 461].) The question is simply one of the adequacy of the fund, under the conditions alleged to exist, to discharge in full the obligations against it created by the provisions of the act and the bond issue. In fact it has been held that a discharge of the obligations on a *pro rata* basis, by thus excluding payment in full to some to the prejudice of others, obviates the possibility of any impairment of their contract rights, inasmuch as all have an equal right to share in the trust fund. (*Moran* v. *State,* 111 Fla. 429 [149 So. 477].)

The petitioner is therefore not entitled to any of the relief prayed for.

The alternative writ is discharged and the peremptory writ is denied.

Seawell, J., Curtis, J., Langdon, J., Waste, C. J., Thompson, J., and Edmonds, J., *pro tem.*, concurred.