[Civ. No. 1822.   Fourth Appellate District.—November 6, 1937.]

UNION SAFE DEPOSIT BANK (a Corporation), Petitioner, v. CITY OF CLOVIS (a Municipal Corporation) et al., Respondents.

Wild, Everts & Carlson for Petitioner.

Arthur Frame, City Attorney, for Respondents.

MARKS, J.—This is an original proceeding seeking to compel respondents to pay to petitioner certain sums of money now in the city treasury of the City of Clovis, and to require respondent Hatch to demand of the respondent members of the board of trustees of the city that they levy, and to require them to levy, a tax for the purpose of paying for land purchased by the city at delinquent tax sales which occurred from June, 1924, to June, 1934, inclusive, in accordance with the provisions of the Improvement Bond Act of 1915.

The City of Clovis is a municipal corporation of the sixth class. F. L. Camp, C. A. Booher, E. W. Burke, H. B. Owens and T. R. Pendergrass compose its board of trustees. F. R. Redford is its city treasurer, and L. V. Hatch is its *ex officio* tax collector.

In 1920 and 1922 the City of Clovis took proceedings under the Improvement Act of 1911 (Stats. 1911, p. 730, as amended) to improve certain of its streets. It issued bonds under the provisions of the Improvement Bond Act of 1915. (Stats. 1915, p. 1441, as amended.) The earlier bonds were known as "Series A" and the second issue as "Series B". Petitioner ultimately became the owner of these bonds. No question is raised as to the legality of the proceedings leading up to their issuance.

Defaults were made by numerous property owners in the two districts in the payments of their assessments and their properties were sold to pay the delinquencies. Each year, commencing with the fiscal year 1923–1924 and ending with the fiscal year 1933–1934, the city levied a tax on all its taxable property to furnish money with which to make payments on the respective amounts for which the properties were sold. Some of the money thus collected was probably paid to the bondholders and the balance now remains in the city treasury in the two redemption funds.

To simplify the issues presented for our decision the parties filed a stipulation which, among other things, abandoned certain technical defenses including the plea of the bar of the statute of limitations. The portions of the stipulations now important to this decision are as follows:

"That the respondent agrees to the issuance of the writ without costs against any of the respondents, requiring respondent to pay to the petitioner the sum of $5,283.28 now in the redemption fund for Series 'A' and the sum of $942.48 now in the redemption fund for Series 'B', the said amounts to be applied first upon the payment of accrued interest *pro rata* among all of the said bonds, the balance, if any, to be applied upon the principal pro-rate.

"That the question to be decided by the court is, whether or not the respondent shall be required to levy any further tax for the purpose of paying for lands purchased by said city at said delinquent tax sales from June 1924 to June 1934 inclusive, in an amount equal to $.10 for each $100.00 valuation of said property after the maturity of said bonds and of said assessments."

Section twelve of the Improvement Bond Act provides for the sale of property upon which there are delinquencies in the payments of assessments. At such sales the city be-

comes the actual or constructive purchaser of the property. It is provided that the city shall thereupon "pay and transfer into said redemption fund the amount of the delinquent assessment and of the delinquent interest thereon upon which said sale is made. . . . In the event of such purchase being made by the city and of any succeeding instalment of such assessment or of such interest not being paid in any future year, the property shall not be sold unless there has previously been a redemption from such sale or unless under the law it is then being sold for delinquent taxes. The city shall nevertheless, unless a resale has been made by it, from time to time when due, pay and transfer into said redemption fund the amount of any such future delinquent assessment and interest pending redemption, and no redemption shall be made until any such subsequent payments, with interest and penalties, shall also be paid." The section further provides that in the event there are no funds available to pay the amount for which the property was sold, the tax collector shall make demand upon the city council that a suitable amount be provided in the next tax levy to furnish funds with which to make such payments.

Subdivision "a" of section sixteen of the same act provides as follows:

"The city council may, and in the event of demand by the tax collector therefor as provided in section twelve hereof must, at the time of fixing the annual tax rate and levying the taxes to be collected for general municipal purposes, levy a special tax upon the taxable property in the city for the purpose of paying for the lands purchased or to be purchased at such tax sales, but not to exceed for each local improvement ten cents on each one hundred dollars of assessable property. Such special tax shall be in addition to all other taxes levied for municipal purposes, and shall be computed, entered and collected in the same manner, and by the same persons and at the same time and with the same penalties and interest as are other municipal taxes of said city."

The two sections of the Improvement Bond Act involved here have been rather thoroughly construed in the following cases: *American Co.* v. *City of Lakeport,* 220 Cal. 548 [32 Pac. (2d) 622]; *Union Safe Deposit Bank* v. *City of Menlo Park,* 3 Cal. (2d) 264 [43 Pac. (2d) 811]; *Southern California Roads Co.* v. *County of San Luis Obispo,* 4 Cal. (2d)

220 [48 Pac. (2d) 34]; *Griffith Co.* v. *County of Los Angeles*, 4 Cal. (2d) 222 [48 Pac. (2d) 35]; *Sawyer* v. *County of San Luis Obispo*, 4 Cal. (2d) 776 [48 Pac. (2d) 35]; *Hammond* v. *City of Burbank*, 6 Cal. (2d) 646 [59 Pac. (2d) 495]; *Thompson* v. *City of Compton*, 6 Cal. (2d) 666 [59 Pac. (2d) 505]; *City of Dunsmuir* v. *Porter*, 7 Cal. (2d) 269 [60 Pac. (2d) 836]; *Kerr Glass Mfg. Corp.* v. *City of San Buenaventura*, 7 Cal. (2d) 701 [62 Pac. (2d) 583]; *Thompson* v. *City of La Mesa*, 9 Cal. App. (2d) 542 [50 Pac. (2d) 504].

It is now settled that section twelve of the Improvement Bond Act provides a plan for the sale of property for delinquent assessments; that the city shall pay the amount bid for the property on the initial sale; that if the property be not redeemed or resold and if it has surplus unappropriated funds in its treasury the city should pay future assessments as they become due until the property is redeemed or resold. This section gives to the bondholder no power to compel the levy of a tax to pay delinquencies. His right to force the city to use surplus unappropriated funds raised by general taxation to pay future assessments is not involved here. The City of Clovis has no such funds.

Subdivision "a" of section sixteen of the act places a duty on the city to levy a special tax not exceeding ten cents on each one hundred dollars assessed valuation of all the taxable property in the city with which to pay the amounts for which properties have been sold to pay initial delinquent assessments. This duty can be enforced by owners of bonds in proceedings of this character. Further it has been held that failure of the tax collector to make demand on the city council to levy the tax is no defense to the proceeding. The law places such duty on the tax collector and the city cannot hide behind the failure of a city officer to perform a duty imposed upon him by law. The law regards as done that which it especially requires to be done by the tax collector in making the demands.

The only question presented to us here which has not been flatly decided in the case which we have already cited is: where the city has bought properties for the initial delinqencies and instead of paying subsequent assessments as they become due has permitted the properties to be repeatedly sold for subsequent assessments as they become due and delinquent, can the bondholder compel the city to levy the special

assessments to pay the amounts for which the properties were subsequently sold?

This question was approached but not decided in the case of *Hammond* v. *City of Burbank, supra,* where it was said:

"It must now be taken as settled, not only by the Lakeport decision, but also by the other cases subsequently decided, that section 16 (a) is the only section imposing a mandatory duty to levy a tax, and it must necessarily follow that since that section provides the purpose for which that tax may be levied, that that purpose is exclusive, and that the city cannot be compelled to levy a tax other than as in that section provided.

"Under this interpretation it is obvious that petitioners' contention that the act provides for a flat limited guaranty for the full payment of the bonds cannot be sustained. All the act provides, so far as the mandatory duty of the city is concerned, is that the city create a revolving fund to assist in the purchase of the lands sold at delinquent tax sales. After referring to the two sections, this court in the Lakeport case stated that 'the method employed by our statute is in effect an *advancement* of funds, which the city may normally be expected to recover upon resale of the lands secured at the delinquent sales' (220 Cal., at p. 562); in other words, the statute does not provide for any guaranty by the city but merely a loan of funds. (See, also, *City of Pasadena* v. *McAllister,* 204 Cal. 267 [267 Pac. 873]; *Municipal Imp. Co.* v. *Thompson,* 201 Cal. 629 [258 Pac. 955].) Petitioners strongly rely on certain language appearing in some of the cases such as: There is a mandatory duty on the part of the city 'to levy and collect said tax to pay the principal and interest on said bonds' (*Union Safe Deposit Bank* v. *City of Menlo Park, supra,* p. 266); a mandatory duty exists 'to pay overdue principal and interest on the bonds' (*Southern California Roads Co.* v. *County of San Luis Obispo, supra,* at p. 165); and similar language appearing in the other cases. These generalizations are not to be given the effect contended for. Although, in a general sense, it is true that the money raised by the ten-cent levy goes into the bond redemption funds, and so is ultimately applied to payment of the principal and interest on the bonds, the duty to levy the tax, under section 16 (a), is not directly for that purpose but for the sole purpose of 'paying for the lands purchased . . . at such

tax sales'. The general language used in the above cases was never intended to mean, and when read in connection with the points there under discussion cannot be interpreted to mean, that the city is obligated to levy taxes to pay for the principal and interest on the bonds. Such an interpretation would be entirely contrary to what was held in the Lakeport case. The city undoubtedly has the power to transfer any available funds to the bond redemption funds, and unquestionably has the power to make the ten-cent levy in order to build up a fund to purchase lands at delinquent sales, but it can only be compelled to make the levy to raise money to pay for lands purchased at such sales, and for no other purpose.''

In the same case it was further remarked that section twelve of the Improvement Bond Act provides:

''That in the event the city becomes the purchaser, and a succeeding instalment of the assessment is not paid, or interest is not paid, the property 'shall not be sold again', unless there has been a redemption, but the city shall 'from time to time when due pay and transfer into said redemption fund the amount of any such future delinquent assessment and interest pending redemption'.''

In *Kerr Glass Mfg. Corp.* v. *San Buenaventura, supra,* it is said:

''Preliminarily it must be said that the petitioner is not entitled to a direction for a levy of taxes sufficient to pay the delinquencies against the lands purchased by the city at delinquent tax assessment sales which occurred subsequent to the initial delinquencies which compelled the sale. It has so been decided in the case of *American Co.* v. *City of Lakeport,* 220 Cal. 548, 563 [32 Pac. (2d) 622 et seq.]. That case settled the interpretation of sections 12 and 16a of the Improvement Bond Act of 1915 to the effect that if there are no surplus moneys available in the general fund the city is not obligated to levy a tax for the purpose of procuring advances to the bond redemption fund wherewith to meet the amounts of assessment instalments falling due on the lands after the sale thereof to the city. The interpretation of those sections of the act by recent decisions limits the mandatory tax levy by the city to the ten-cent levy provided by section 16a. (Citing cases.)

"More recently in the case of *Hammond* v. *City of Burbank*, 6 Cal. (2d) 646 [59 Pac. (2d) 495], it was determined that not only was the ten-cent levy the only mandatory levy provided by the Improvement Bond Act of 1915, but that the purpose of the levy as provided by the act is limited and exclusive; that is, that the tax realized from the ten-cent levy may be used only to provide advances to pay the purchase price (the amount of the initial delinquent improvement assessment instalment, penalties and costs) of the lands sold to the city on delinquent tax sales.''

The last-cited case would be decisive of the question we are considering if it there clearly and affirmatively appeared that the property had been sold to the city for delinquencies occurring after the initial sale. While that fact is intimated and inferred it does not necessarily affirmatively appear.

To decide the question we must advert to the language of section twelve and subdivision ''a'' of section sixteen of the Improvement Bond Act. The proviso requiring the tax collector to make the demand for the levy of the special tax occurs in the sentence of section twelve dealing with the initial sale of the property. It does not again appear in the section. The section further provides that after the initial sale and before redemption the property shall not be again sold unless, under the law, it is being sold for delinquent taxes. Subdivision ''a'' of section sixteen makes the levy of the special tax dependent on the demand of the tax collector. As this demand should be made under the provisions of section twelve only on the initial sale of property, and as that section does not contemplate subsequent sales of property already sold to the city, except as already pointed out, it seems rather obvious that the levy of the special tax can only be enforced by a bondholder to pay the purchase price of property on its initial sale to the city. We take it that *initial sale* should be held to mean any sale where property passes from private to municipal ownership. If property is once sold to the city, is redeemed by the owner or resold by the city and is again sold for a subsequent delinquency, both sales should be held to be initial for the purposes of the Improvement Bond Act.

The facts before us, as nearly as we are able to determine from the record, show the following as to ''Series A'' bonds: The total of the selling prices of the delinquent properties

including the initial and subsequent sales is about $16,768.49. The total of the selling prices for initial delinquencies is about $4,084.24. Under the stipulation it appears that there is the sum of $5,283.28 in the redemption fund, largely raised by voluntary special assessments, with which to pay the obligation of the city in the sum of $4,084.24.

With reference to the bonds of series A, as it seems evident from the record that the city has raised by voluntary special assessments an amount equal to or greater than the amount which petitioner could force it to pay by means of an involuntary special assessment, assuming that such amount could be so raised, it should follow that petitioner is not now entitled to a writ directing the levy of an involuntary special assessment. As by means of voluntary assessments the city has raised and paid, or in this proceeding will be required to pay, all that it could be required to raise and pay by an involuntary assessment (probably) there is no obligation on its part to pay the debt again.

The following facts appear as nearly as we are able to determine from the record before us as to the ''Series B'' bonds: The total for which the properties were sold to the city on initial and subsequent sales is about $3,684.94. The total sum for which these properties were sold on initial sales is about $1,054.71. It is stipulated that the sum of about $3,690.92 has been raised by voluntary special assessments to pay the purchase price paid by the city for the properties sold to it. As this sum exceeds not only the total of the initial sales prices but the total of the initial and subsequent prices, petitioner should not now be entitled to a writ directing the levy of an involuntary special assessment to pay obligations already liquidated or to be liquidated in this proceeding.

While we believe the figures we have just detailed are correctly arrived at on the record before us, from the statements made by counsel orally and in their briefs we are not convinced that on further examination of the city's books and records they may not be challenged. For instance, it is admitted that some property was redeemed after sale. It may be true, and probably is, that some of it was sold to the city a second time. If this is true we have not been able to segregate these second ''initial sales'' from what we have termed subsequent sales. There are other questions which

we may not have been able to exactly determine from the record here. For these reasons we believe that the denial of the peremptory writ of mandate requiring respondents to levy an involuntary special assessment should be without prejudice.

It is ordered:

That that portion of the petition seeking a peremptory writ of mandate requiring respondents to levy a special assessment on all the taxable property in the city is denied without prejudice.

That in accordance with the stipulation of the parties a peremptory writ of mandate issue directing respondents "to pay to the petitioner the sum of $5,283.28 now in the redemption fund for Series 'A' and the sum of $942.48 now in the redemption fund for Series 'B', the said amounts to be applied first upon the payment of accrued interest *pro rata* among all of the said bonds the balance, if any, to be applied upon the principal pro-rate".

That the alternative writ of mandate be otherwise discharged.

That petitioner pay the costs of this proceeding.

Barnard, P. J., and Jennings, J., concurred.