[Sac. No. 5340. In Bank. Dec. 1, 1942.]

WULFF-HANSEN & COMPANY (a Corporation), Appellant, v. M. A. SILVERS et al., Respondents.

Charles Kasch for Appellant.

Kirkbride & Wilson, Ernest A. Wilson, Harold P. Huls, City Attorney (Pasadena), O'Melveny & Myers and James L. Beebe, as Amici Curiae, on Behalf of Appellant.

H. G. Crawford, Lovett K. Fraser and Burt W. Busch for Respondents.

CURTIS, J.—In this proceeding instituted in 1936 the plaintiff sought a judgment to compel the city of Lakeport and designated officials thereof—namely, the treasurer, tax collector, auditor and assessor—to perform the duties enjoined upon them by law in connection with the enforcement of street assessment liens, and in particular to force a tax sale of certain described real property. By the same action the plaintiff also sought to quiet title against certain individuals claiming the lands involved as the result of purchase at foreclosure sale, and to have it declared that these defendants hold such property subject to the street assessment liens which became delinquent subsequent to the filing of the foreclosure proceedings, and that such liens were not extinguished by the decree of foreclosure. Following the court's sustaining of the demurrer of the defendant city and its treasurer to the first amended complaint and the plaintiff's failure to amend its pleading as to them within the time required by law after having received written notice of the court's ruling, a judgment of dismissal was entered as to these defendants. Accordingly, the action was tried only as against the remaining city officials above mentioned and the individual claimants of the real property. The facts were undisputed. Findings and judgment were entered in favor of the defendants against whom the plaintiff elected to proceed to trial, that the plaintiff take nothing by its action. This appeal is based upon the judgment roll alone, it being the appellant's contention that the findings justify the relief sought by it. Preliminarily it should be said that the propriety of the trial court's dismissal of the city of Lakeport and its treasurer from this action is not challenged by either the appellant or the respondents herein, and consequently these originally named defendants are not before this court upon this appeal.

The facts necessary to a determination of the legal ques-

tions presented by this proceeding may be summarized from the findings as follows: In 1925 the city of Lakeport commenced proceedings under the Improvement Act of 1911 (Stats. 1911, p. 730; Deering's Gen. Laws, 1931, Act 8199) to improve Main Street in said city. To cover the cost of this work it issued bonds under the provisions of the Improvement Bond Act of 1915 (Stats. 1915, p. 1441; Deering's Gen. Laws, 1931, Act 8209). The plaintiff is the owner of seven of these bonds of the par value of $1,000 each, which bonds matured on the 2nd day of July, 1936. The bonds were duly presented for payment at maturity and thereafter payment to the extent of thirty-eight per cent of the principal and all coupon interest to the date of maturity was made thereon, in pursuance of the terms of a court order as will hereinafter appear.

Assessments levied under the Improvement Bond Act of 1915 upon the property here involved became delinquent for the years 1927 to 1931, inclusive. On May 14, 1931, the city of Lakeport, a municipal corporation, commenced an action to foreclose the liens of these installments, and a decree of foreclosure was made and entered on April 26, 1932, directing the sale of this real property. The sale was held and the defendants Silvers, Godfrey, Morey and Martin each purchased a group of lots, paying the sum of $1.00 for each group and acquiring such property subject to all unpaid installments, interest and penalties under the same proceedings. A certificate of sale and deed were duly issued covering the realty here involved. Assessments levied by the city upon this property and payable subsequent to the year 1931 have not been paid and are now delinquent. Thereafter and for the period from 1932 to 1937, inclusive, the city council of the city of Lakeport duly adopted and passed annual resolutions ordering that all assessments remaining due and unpaid on this real property as of the various respective years be collected by foreclosure proceedings, and that the tax collector be credited upon the assessment roll with the amount charged against him on account of such assessments ordered to suit and be relieved of further duties in that regard. No such suits were instituted until subsequent to the filing of the present proceeding and on January 20, 1937, when the city commenced an action to secure judgment for the total

amount of the principal and interest installments due and delinquent not theretofore ordered to suit by foreclosure. This action is still pending and undetermined.

On July 20, 1935, the city of Lakeport brought an action against the present plaintiff and others to obtain a declaration of its rights and duties in respect to the improvement bonds owned by the defendants named therein. By the judgment, long since final, rendered in that case the city was ordered to prorate among the holders of matured bonds the moneys available in the bond redemption fund and to pay thirty-eight per cent of the face value of the improvement bonds and all interest thereon to the date of maturity. This judgment further provided that ''Plaintiff, Town of Lakeport, make all necessary assessments and levy all necessary taxes as provided in said Act, and that said assessment and levy of taxes continue and the Plaintiff Town was thereby directed to levy and collect the same until such time as all mature and unpaid Main Street Improvement Bonds of the said Plaintiff Town, and all interest thereon as provided by law, have been fully paid, satisfied and discharged, or until funds are available for such purpose.'' A similar order was made in a judgment entered in an action commenced on September 5, 1936, against the city of Lakeport by the present plaintiff seeking to have the city commanded to ''comply with all the provisions of the Improvement Bond Act of 1915 (Statutes 1915, page 1441), and as the same have been amended prior to the issuance of the aforesaid bonds.'' This last-mentioned judgment has also long since become final. At the time of the trial of the instant action there was a balance of $4,987.50 in the Delinquent Street Assessment Fund and a balance of $2,418.48 in the Main Street Improvement Bond Fund of the city of Lakeport.

The pertinent portions of the Improvement Bond Act of 1915 relative to the available methods of enforcement of the obligation of the bonds in case of delinquencies are the following:

Section 12 in its material aspects, after specifying when the unpaid assessments that secure the payment of bonds shall be payable, reads: ''Upon default in payment, the lands securing such installments and assessments shall be sold in the same manner in which real property in such city is sold, for

the nonpayment of general municipal taxes, and be subject to redemption within one year from date of sale in the same manner as such real property is redeemed from such delinquent sale, and upon failure of such redemption shall in like manner pass to the purchaser.

"The city may be the purchaser at any delinquent sale in like manner in which it becomes or may become the purchaser of property sold for nonpayment of the general municipal property tax, and in the event of its so becoming the purchaser shall pay and transfer into said redemption fund the amount of the delinquent assessment and of the delinquent interest thereon upon which said sale is made. In cases where the municipal property tax is collected by county or city and county officials and sales for nonpayment of such taxes are made to the state, the state shall be the purchaser at any such sale hereunder, but shall hold the title acquired at such sale upon behalf of the city and shall account to the city for any moneys received upon redemption or from the sale of such property, the city for the purposes of this act being deemed the real purchaser. In other cases where under the law the city is not always the purchaser at sales for delinquent municipal taxes, the city shall become such purchaser at any delinquent sale hereunder where there is no other purchaser. In the event of there being no available funds in the treasury with which to make such payment, the tax collector shall delay the entry of the certificate of sale until such funds are available, making demand in the meantime upon the city council that a suitable amount be included in the next tax levy for the purpose of providing funds with which to make such payment; provided, however, that the period of redemption from such tax sale shall not be extended thereby nor the rights or privileges of the property owner be thereby in anywise affected. In the event of such purchase being made by the city and of any succeeding installment of such assessment or of such interest not being paid in any future year, the property shall not be sold unless there has previously been a redemption from such sale or unless under the law it is then being sold for delinquent taxes. The city shall nevertheless, unless a resale has been made by it, from time to time when due pay and transfer into said redemption fund the amount of any such future delinquent

assessment and interest pending redemption and no redemption shall be made until any such subsequent payments, with interest and penalties, shall also be paid.''

Section 11, subdivision (c), provides in part: ''In the event of nonpayment of any assessment or reassessment or installment thereof, or of any interest thereon, together with any penalties and other charges accruing under the taxation ordinance of the city and not later than four years after the due date of the last installment of principal, as a cumulative remedy, the same when due and delinquent may by order of the council be collected by suit brought in the superior court to foreclose the lien thereof. . . . The foreclosure suit shall be governed and regulated by the provisions hereof, and also where not in conflict herewith by the codes of this state. . . . Upon the ordering of any such foreclosure suits the tax collector shall be credited upon the assessment-roll then in his hands with the amount charged against him on account of such assessments or reassessments ordered to suit and be relieved of further duty in regard thereto.''

Section 16, subdivision (a), provides: ''The city council may, and in the event of demand by the tax collector therefor as provided in section twelve hereof must, at the time of fixing the annual tax rate and levying the taxes to be collected for general municipal purposes, levy a special tax upon the taxable property in the city for the purpose of paying for the lands purchased or to be purchased at such tax sales, but not to exceed for each local improvement ten cents on each one hundred dollars of assessable property.''

It is the position of the respondents herein that when assessments upon property securing the bonds are in default, the city, under the above-quoted provisions of the bond act, has two independent courses which it may, at its option, pursue. One is the sale by the tax collector in the same manner as other property of a municipality is sold for delinquent taxes, and the other is an action in foreclosure. They insist that since the city of Lakeport has elected to avail itself of the latter remedy and has commenced appropriate foreclosure proceedings (§ 11[c]), it cannot be compelled to adopt the other alternative and hold a tax sale of the delinquent properties (§ 12). But this construction of the statutory language does not take into account the scope of liability that

the act under consideration imposes on the municipality and the coordinating provisions thereof prescribing the municipality's duties respecting the bonds upon the occurrence of delinquencies. ■ The act must be considered and applied in all of its parts, and each section must be reconciled with the others and be made effective if possible. ■ Consistent with the views expressed in two previous decisions of this court wherein the relationship of the sections here involved was discussed, *American Co.* v. *City of Lakeport,* 220 Cal. 548 [32 P.2d 622], and *Hammond* v. *City of Burbank,* 6 Cal.2d 646 [59 P.2d 495], the mere fact that the city of Lakeport has evinced an intention to proceed with foreclosure proceedings does not preclude the granting of relief to the appellant bondholder under the present circumstances.

By the provisions of section 12 of this act, when a tax sale is had and the city becomes the purchaser of the property, it becomes its duty to pay the amount of the delinquent assessment into a bond redemption fund. Such funds are thereupon used to redeem the bonds. If there are no funds available to the city to make such payment, it is the mandatory duty of the city to levy a ten-cent tax as stipulated in section sixteen, subdivision (a), of this act. After announcing these principles in *American Co.* v. *City of Lakeport, supra,* a case concerning this same bond issue, this court significantly commented upon the effect of the foreclosure provision, at page 562:

''We come now to the final problem, that of interpretation of sections 11, 12 and 16 of the statute, and the relation each bears to the others. It is first contended by respondents that there is no mandatory duty to levy taxes under sections 12 and 16, since the city may, at its election, proceed to foreclose under section 11(c). The answer to this is found in the statute itself, which expressly declares the provision for foreclosure to be a *cumulative* remedy. It is different in character and procedure, and is slower, more expensive and less efficient than the tax sale. While it may perhaps be resorted to *either before or after a tax sale,* the commencement of foreclosure proceedings cannot, under the act, be deemed an excuse for nonperformance of any duty under sections 12 and 16, to levy taxes to pay for property purchased. Under section 12 the city, through the agency of

the state, becomes the real purchaser of the property at the sale. It thereupon becomes the duty of the city, as such purchaser, to pay the amount of the assessment into the redemption fund; and if it has no funds with which to do so, then the taxing provisions are applicable." (Italics added.)

In the later case of *Hammond* v. *City of Burbank, supra,* a mandamus proceeding to compel the levy of a tax to pay the purchase price of property sold for delinquent assessments, the correlation of these particular sections was again considered in connection with the municipality's argument that "the remedy of foreclosure is an alternative remedy (although section 11 expressly states the remedy is cumulative) and that once resorted to the foreclosure proceedings supersede proceedings had under sections 12 and 16(a)." The opinion discloses at page 659 that in reference to certain of the delinquent properties the city had instituted foreclosure proceedings under section 11 of the 1915 Bond Act, that only fifty per cent of the actions so commenced proceeded to final judgment, that solely as a test proposition but one sale was ever held under these judgments, and that it was "practically conceded that the holding of foreclosure sales would be an idle gesture, inasmuch as the cost thereof would be prohibitive, and because it was extremely unlikely that purchasers could be found." After noting that "the foreclosure proceedings did not stop the tax sales under section 12—they were held just the same," the court continued at page 660: "The remedy of foreclosure, in our opinion, is not an alternative but a *cumulative remedy,* and is a *remedy given to aid the city, not the bondholders.* Any other interpretation of the foreclosure provisions would permit the city by purported foreclosure actions to totally escape the mandatory duties imposed upon it under section 16(a), even where, as here, it is known by all concerned that such foreclosure actions will not result in an actual sale of the property." (Italics added.)

Recognizing the above-quoted language from the Lakeport opinion as decisive of the proposition under consideration, the court in the Hammond case succinctly concluded its discussion of the point at page 661: "It *may* be that when foreclosure proceedings are instituted and *proceed not only to final judgment, but also to sale, then the city may be re-*

*lieved of liability (Federal Construction Co. v. Wold,* 30 Cal. App. 360 [158 P. 340]), a point we expressly refrain from deciding, but the foreclosure provisions were *never intended, in our opinion, to constitute an alternative method of procedure so that the city by the mere commencement thereof, or by proceeding to judgment therein,* should be entirely relieved of its mandatory obligation to make the ten-cent levy under section 16(a)." (Italics added.) Accordingly, a proportionate part of the special ten-cent tax levy ordered by the peremptory writ of mandate issued in the Hammond case was to provide funds to pay the purchase price of property on which the delinquent assessments were ordered foreclosed before any sale under the tax procedure was made.

The fact that in both the Lakeport and Hammond cases the precise question presented for consideration concerned the mandatory obligation of the municipality to pay for delinquent properties *after purchase at a tax sale* does not mitigate the force and applicability of the principles of statutory construction therein announced in connection with the present factual situation, involving the city's attempt to escape its responsibility to so purchase under the prescribed tax procedure by the act of its council ordering foreclosure of the delinquent assessment liens. In the Lakeport case at page 553 appears a succinct and accurate statement of the purpose of the adoption of this bond act: "The Improvement Bond Act of 1915 provides for a more marketable type of security, bonds issued serially in even denominations, secured by assessments payable at the same time and in the same manner as general taxes." Accordingly, section 12 provides that when there are no available funds in the city treasury with which to pay for property purchased at the delinquent tax sale, the tax collector shall make demand upon the city council that a "suitable amount" be included in the next tax levy to provide funds with which to make such payment. Section 16, subdivision (a), states that the city council may, and in the event of demand by the tax collector as provided in section 12 must, levy a "special tax" for the purpose of paying for lands "purchased or to be purchased" at such tax sales, but "not to exceed for each local improvement ten cents on each one hundred dollars of assessable property."

While it is clear that the Legislature by these sections

has not levied a tax, it has thereby fixed the liability of the city to pay for property purchased and has required the city to levy and collect taxes in an amount suitable for this purpose. Thus, to the extent of making this limited annual tax levy so long as its obligation is shown to exist the municipality becomes the guarantor of the improvement bonds as and when they become delinquent, the method of enforcement employed by the statute being in effect an *advancement* of funds, which the city may normally be expected to recover upon resale of the lands secured at the delinquent tax sales. (*Kerr Glass Mfg. Corp.* v. *San Buenaventura,* 7 Cal.2d 701 [62 P.2d 583] ; *Hammond* v. *City of Burbank, supra; American Co.* v. *Lakeport, supra.*)

 Commensurate with the declared object of this legislation, the remedy of foreclosure with which the Bond Act of 1915 invests the city is by express terms in section 11, subdivision (c), made a *cumulative* and not an alternate remedy that is to be employed, not solely for the benefit of the city, but as an aid and assistance to the city in discharging its duty to the bondholders, to the end that the assessments may be collected and the bonds paid in the manner prescribed. Any money that the city receives as the result of the foreclosure actions, over and above authorized costs, is not city money but belongs to the bondholders, and the city is trustee for them as to such money. In contrast to the municipality's responsibility under the tax proceedings as outlined in sections 12 and 16(a), the foreclosure provision contains no stipulation for the levy of a special tax and no specific requirement that the city become the purchaser, if there is no other, at the execution sale after the judgment of foreclosure. This marked distinction as incorporated in the bond act signifies the Legislature's intention to establish as the source of primary protection for the bondholders' investment the tax sale procedure specified in sections 12 and 16(a), and to furnish to the city by the "cumulative remedy" of foreclosure provided in section 11(c) the means of perfecting its title to property purchased at a *defective* tax sale. That such a provision *for the use of the city* constitutes an essential feature of the statutory scheme cannot be doubted in view of the act's provision for the city's resale of the delinquent property purchased at tax sale in order to re-

coup its expenditures in connection therewith. Moreover, the expense and delay accompanying foreclosure proceedings and sale thereunder, in contrast to the expediency and simplicity of tax sale procedure, do not recommend the municipality's employment of the former course as a means of meeting its obligation to the bondholders and fortify the conclusion that these methods of enforcement were not intended by the Legislature to be alternative, but that foreclosure was provided as an *aid to the city*, to be used principally to perfect its tax title, if faulty.

To sustain their position that there is no legal duty upon the city of Lakeport to sell the delinquent property at tax sale, the respondents rely upon the following provision of section 11, subdivision (3): "Upon the ordering of any such foreclosure suits the tax collector shall be credited upon the assessment-roll then in his hands with the amount charged against him on account of such assessments or reassessments ordered to suit and be relieved of further duty in regard thereto." But this language to the effect that when foreclosure proceedings are so ordered, the tax collector shall be credited with the amounts charged against him on account of the specified assessments, is not reasonably susceptible of the interpretation that it was thereby intended that the assessment liens would be extinguished regardless of the amount realized upon the foreclosure sale. The objection to the construction advanced by the respondents is that it gives too much effect to this single sentence of section 11(c) and not enough to sections 12 and 16(a), specifying the rights of the bondholders to have the city perform its mandatory duties under the tax sale procedure fundamental to the satisfactory operation of the act in the case of delinquencies in the payment of assessments. Rather it must be assumed that the Legislature intended by the language under consideration that the moneys received from the foreclosure sales after the reduction of authorized costs should equal the charges before the tax collector would be entitled to remove the outstanding assessments from the records. This construction coincides with the observation in the Hammond case that "when foreclosure proceedings are instituted and proceed not only to final judgment, but also to sale, then the city *may* be relieved of liability." (Italics added.)

The respondents also urge that if following the order of foreclosure of the assessment liens, the tax collector is "relieved of further duty in regard thereto," he is not only under no legal duty, but he has no power or authority to make demand upon the city for a tax levy to provide funds for the payment of delinquent properties purchased at tax sales. This quoted language simply indicates that the tax collector has no duty in the matter insofar as the foreclosure proceedings are concerned, but it does not render inapplicable the provisions of sections 12 and 16(a) nor negative this official's authority and obligation to act thereunder when the circumstances demand such proceedings for the protection of the bondholders. (*Hammond* v. *City of Burbank, supra.*) The municipality's proper responsibility under this bond act was recognized in *Union Safe Deposit Bank* v. *City of Clovis*, 23 Cal.App.2d 358 [73 P.2d 242], a decision in mandate, where it was said at page 362 in reference to section 16, subdivision (a): "Further it has been held that failure of the tax collector to make demand on the city council to levy the tax is no defense to the proceeding. The law places such duty on the tax collector and the city cannot hide behind the failure of a city officer to perform a duty imposed upon him by law. The law regards as done that which it especially requires to be done by the tax collector in making the demands." Upon a like basis the act of the city of Lakeport in ordering foreclosure would not permit it to escape its responsibility as defined by the bond act. ▮ Manifestly, where, as here, it is improbable that much will be realized from the foreclosure actions, the transfer of funds provisions in section 12 and the special tax provisions of section 16, subdivision (a), in connection with the tax sale proceedings are essential to the legislative scheme outlined in this bond act for the ultimate retirement of the improvement bonds, and it is reasonable to assume that the Legislature, in anticipation of just such situation as the present one, designedly used the mandatory language of these last two mentioned sections as definitive of the municipality's duties in relation to the bondholders' investment and characterized the foreclosure proceeding as a "cumulative" rather than an alternative remedy.

▮ In this connection the respondents finally argue that if the city cannot escape the imposed liability involved in the tax procedure, by ordering foreclosure suits, the bond act is unconstitutional as violative of the provisions of section 18

of article XI of the state Constitution, prohibiting the incurring of any indebtedness or liability exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the qualified electors. A complete and conclusive answer to this contention appears in the Lakeport case, where this point was strenuously urged and thoroughly considered at pages 559-560, and the court, after a full discussion and analysis of the cases upon which the respondents here place special reliance, held that the obligation of the municipality to pay as the purchase price of property sold to it at tax sale the amount due on delinquent bonds secured thereby, is imposed by law and therefore it is not a liability within the constitutional limitation.

Adverting to the present factual situation, it is apparent that measured by the results of the earlier foreclosure sales, the pending and undetermined foreclosure suit above mentioned insures the bondholders little or nothing in return on their investment. In fact, the city of Lakeport's dilatory course of action in initiating and prosecuting the foreclosure proceedings undertaken in January, 1937, demonstrates its conviction that no appreciable sums will be realized in the event foreclosure sales are held. Consistent with the view that the order of foreclosure suits by the city council does not operate to absolve the municipality of liability under the mandatory provisions of sections 12 and 16(a) of this bond act is the adjudication of the rights and duties of the parties concerned in the two above-mentioned declaratory actions of 1935 and 1936, that is, the city of Lakeport and the present plaintiff. By the final judgment rendered in each case the city of Lakeport was ordered to levy assessments and taxes and collect the same until all matured Main Street Improvement Bonds and interest were paid, or until funds were available for such purpose. Pursuant to the terms of these respective decrees, the city through levy of the special ten-cent tax as specified in section 16, subdivision (a), has raised the sum of $4,987.50, which now stands in the Delinquent Street Assessment Fund. As settled in the Lakeport and Hammond cases, the purpose of accumulation of this latter amount is to feed the Bond Redemption Fund, and although it is to be applied ultimately to payment of the principal and interest on the improvement bonds, such transfer can only occur as the result of the city's purchase of the delinquent properties at tax sales. Accordingly, under the above analysis of the

relevant sections of this bond act, this proceeding was properly instituted by the appellant herein to compel the holding of tax sales and to secure for itself as bondholder the full protection of its investment as contemplated by the statute. In the event the city of Lakeport does become the purchaser at the delinquent tax sale, it becomes the duty of the city to transfer the $4,987.50 at present in the Delinquent Street Assessment Fund to the Bond Fund, wherein $2,418.48 is now held in trust for the bondholders, and thus provide $7,405.98 for redemption of the outstanding bonds. Any additional sums required by the city for payment of the purchase price of these properties will have to be raised by the continuing annual ten-cent levy upon the assessable property as specified under the terms of section 16, subdivision (a). (*Hammond* v. *City of Burbank, supra; American Co.* v. *Lakeport, supra.*)

The only remaining point to be considered on this appeal relates to the title acquired by the purchasers at the foreclosure sale in 1932. Decisive of this question is the following provision of section 12 of the bond act under discussion: "The purchaser, whether at tax collector's sale or at resale by the city in the event of the city having become the purchaser, or at foreclosure sale by order of the court, shall take the property subject to all unpaid installments, interest and penalties under the same proceedings and to all public improvement assessments which may have priority thereover." Thus, by the express terms of the statute itself the assessment liens are not extinguished by foreclosure actions, but the effect of such proceedings is to substitute a new owner, and the purchaser, after foreclosure, must pay all delinquent assessments thereon in order to obtain clear title to the property; otherwise, the bondholders would have no protection whatsoever in respect to their investment. While the trial court found that the individual defendants purchased the lots at the foreclosure sale in question "subject to all unpaid installments, interest and penalties under the same proceedings," it declined to pass judgment on the point. In view of these precise findings on this matter, the trial court should have made an appropriate conclusion of law to the effect that the defendant purchasers at the foreclosure sale took title to the property subject to the assessment liens which were unpaid at the time the foreclosure action went to judgment, and all assessments which became due subsequently.

It follows from the foregoing discussion that the plaintiff

[appellant herein] is entitled to the relief here sought. Accordingly, the judgment in favor of the defendants is reversed, with directions to the trial court to enter judgment that the individual defendants now hold the real property involved in this proceeding and described in the first amended complaint, subject to the delinquent street assessment liens as hereinabove indicated. It is further ordered that by its judgment the trial court direct the following defendant officials of the city of Lakeport—namely, the tax collector, auditor and assessor—to perform the duties enjoined upon them by law in connection with the enforcement of said street assessment liens, and in particular command the tax collector to hold a tax sale of the real property herein declared subject to these street assessment liens.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Ward, J. pro tem., concurred.

CARTER, J.—I dissent. The effect of the majority opinion in this case makes the 1915 Improvement Bond Act bonds general obligations of the municipality in violation of section 18, article XI of the Constitution of California and renders said act unconstitutional. Section 18 of article XI forbids a municipality from incurring any indebtedness or liability exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the qualified electors. It also renders said act violative of section 12 of article XI of said Constitution which provides:

"Except as otherwise provided in this Constitution, the *Legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes,* but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." (Emphasis added.) It cannot be doubted that if a mandatory obligation is imposed by the Legislature upon the municipal corporation, such imposition is a violation of section 12 of article XI above quoted. That necessarily follows because the amount of revenue available to a municipality is dependent upon the exercise of the taxing power, and if the Legislature by statute commands a city to pay an obligation, it has also commanded the city to levy a tax which is no different from a direct levy of the tax

by the Legislature, that which is forbidden by said section 12 of article XI. It is stated in 46 A.L.R. 628:

"Saddling a debt or burden upon a municipality which can be lifted only by municipal taxation is quite clearly the equivalent of imposing a tax. Hence, where a Legislature is inhibited from imposing a tax for corporate purposes, or forbidden to authorize a municipality to impose a tax for any other than corporate purposes, it is also prohibited from thrusting a burden upon a municipality, if the object of the burden is to effect a corporate purpose." And again at page 640:

"While the rule has apparently been overlooked in some instances, it has been established by a considerable number of cases that the legislative imposition of obligations or burdens upon municipalities which must of necessity be lifted or fulfilled by municipal taxation or bonds is the equivalent of the direct imposition of taxes, for what the legislatures cannot do directly under the provisions they cannot do indirectly." Those propositions are supported by the authorities. (See 46 A.L.R. 609, 640.) The majority opinion holds that the city's obligation to pay the purchase price of the property sold for delinquent assessments is mandatory; that the city has no discretion but must sell the property at a tax sale rather than follow the foreclosure procedure for the recovery of the delinquent assessments; that it must be the purchaser at that sale if there are no others; and that it must levy a ten cent tax to pay that purchase price from year to year until it is discharged. There could not be a clearer case of a violation of section 12 of article XI of our Constitution.

The opinion on its face declares that the obligation is a mandatory one. In giving the reason that the act does not violate the debt limitation provision of the Constitution (Art. XI, sec. 18) the opinion states:

"In this connection the respondents finally argue that if the *city cannot escape the imposed liability* involved in the tax procedure, by ordering foreclosure suits, the bond act is unconstitutional as violative of the provisions of section 18 of article XI of the state Constitution, prohibiting the incurring of any indebtedness or liability exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the qualified electors. A complete and conclusive answer to this contention appears in the Lakeport case, where this point was strenuously urged and thoroughly

considered at pages 559-560, and the court, after a full discussion and analysis of the cases upon which the respondents here place special reliance, held that the *obligation of the municipality to pay as the purchase price of property sold to it at tax sale the amount due on delinquent bonds secured thereby, is imposed by law* and therefore it is not a liability within the constitutional limitation." (Emphasis added.) The obligation is declared to have been *imposed by law*. The only "law" involved is the Bond Improvement Act of 1915, an act of the *Legislature*, the very kind of legislation prohibited by section 12 of article XI of the Constitution. The opinion unquestionably poses a dilemma from which there is no escape. If it be urged that there is no violation of section 12 of article XI, as suggested in *American Co.* v. *City of Lakeport*, 220 Cal. 548, 555 [32 P.2d 622], because:

"The city *may or may not* order the local improvement, but, if it does, the assessment for the benefit of the guaranty fund must be made, and this is imposed by the city and not by the act of the legislature," (italics added) then it necessarily follows that the city *voluntarily* assumed the obligation by launching upon the improvement. If that be true, then the obligation is not a mandatory one imposed by law and is an incurring of an indebtedness in excess of the revenues contrary to the debt limitation provision of the Constitution. (Art. XI, sec. 18.) That is why I say that there must necessarily be a violation of one of those two constitutional inhibitions. The very reason given for the nonexistence of a violation of one of those provisions inescapably compels the conclusion that the other has been thwarted, or vice versa. Certainly no such illogical reasoning should be indulged in as the basis for a decision in any case, let alone be used as a means of nullifying two clear and explicit prohibitions in the Constitution.

The point is made in the majority opinion that because the Legislature declared the remedy by foreclosure action to be cumulative, the city has no choice in the matter but must proceed with a tax sale even though they are pursuing the foreclosure remedy. That gives a wholly unjustified meaning to the word cumulative. Cumulative is in addition to and always carries with it the right of the possessor of the remedy to *elect between it and any other remedy*. It certainly does not contemplate that the remedies could be pursued concurrently. A cumulative remedy is one created by statute in

addition to one which still remains in force, and when a statute gives a new remedy, and contains no negative, express or implied, of the old remedy, the new one is cumulative and the *party may elect between the two.* (*Bowles* v. *Neely,* 28 Okla. 556 [115 P. 344]; *State* v. *Barboglio,* 63 Utah 432 [226 P. 904]; *Chicago & N. W. Ry. Co.* v. *Chicago,* 148 Ill. 141 [35 N.E. 881].) Here the city is the possessor of the remedies and has *elected* to pursue the foreclosure proceeding. To assert, as is done in the majority opinion, that the city has no discretion to make that election because by the whole tenor of the Improvement Bond Act the bondholders are entitled to have the property sold at tax sale, the city become the purchaser, and the levy of a tax to pay the purchase price, not only divests the city of all discretion in its taxation powers in violation of article XI, section 12, but also is squarely contrary to the whole purport of the act, that is, that the bonds issued thereunder are not a general obligation of the city. In *Hammond* v. *City of Burbank,* 6 Cal.2d 646, 654 [59 P.2d 495], this court positively and unequivocally declared that ". . . the bonds are in *no sense* general obligations of the city." (Italics added.) But the majority opinion, while giving lip service to that proposition *undeniably makes the bonds the general obligations of the city.* There can be no escape from that conclusion as it is there held: (1) That the city must sell at a tax sale rather than foreclose. (2) That it must be the purchaser at that sale if there is no other purchaser. (3) That in all probability there will be no other purchasers. (4) That not only must it levy not exceeding a ten cent tax to pay the purchase price for *one* year, *but it must continue thereafter to levy a similar tax in the years thereafter until the purchase price has been paid in full.* The majority opinion concedes that the great probability is that the city, eventually will have to pay all of the bonds by a general tax levy. What more is required to make these bonds general obligations of the city? The answer is obvious. An obligation which a municipality can be compelled to pay out of funds raised by a general tax levy is a general obligation. Can there be any doubt that under the holding in the majority opinion the improvement bonds in question are not declared to be general obligations of the city of Lakeport? To answer this question in the affirmative is to deny the existence of a reality.

I cannot agree with the interpretation placed upon sub-

division c of section 11 of the Improvement Bond Act of 1915 by the majority opinion. Obviously, it was the intention of the Legislature to confer upon a municipality the power to recover delinquent assessments by foreclosure proceedings in a court action in lieu of the conventional delinquent tax sale, and that such court action was to be in lieu of or a substitute for such delinquent tax sale. If such was not the intention of the Legislature, why was the following provision embraced within said section?

"Upon the ordering of any such foreclosure suits, the tax collector shall be credited upon the assessment-roll then in his hands with the amount charged against him on account of such assessments or reassessments ordered to suit and be relieved of further duty in regard thereto."

The majority opinion concedes that if the foreclosure proceeding is consummated and the property sold for a sufficient sum to cover the delinquent assessment and penalty, no delinquent tax sale of the same property for the same assessment is required. The query then arises as to whether a delinquent tax sale can be required so long as a foreclosure proceeding is pending; in other words, can a municipality be required to conduct a delinquent tax sale of property subject to a delinquent assessment when it is proceeding diligently to foreclose the assessment lien by an action in the superior court. The unqualified holding in the majority opinion that a city can be compelled by writ of mandate to proceed with a delinquent tax sale in accordance with the provisions of the act regardless of the pendency of a foreclosure proceeding justifies the conclusion that it is the opinion of the court that whatever action the city might institute in accordance with the provisions of subdivision c of section 11 of the act is ineffective.

It seems to me that the majority opinion ignores the clearly expressed intention of the Legislature contained in section 11 of the act and that a proper interpretation of the provisions of this section requires that the judgment of the trial court in this action should be affirmed.

Respondents' petition for a rehearing was denied December 28, 1942. Carter, J., voted for a rehearing.